MONTGOMERY ET AL., APPELLANTS, *v.* GILBERT ET AL., RESPONDENTS.

(Nos. 7,874 to 7,877.)

(Submitted November 16, 1939.   Decided March 21, 1940.)

(See note at close of opinion.)

[108 Pac. (2d) 616.]

*Mr. S. P. Wilson, Mr. J. E. Kelly, Mr. H. L. Maury* and *Mr. A. G. Shone,* for Appellants, submitted an original and a reply brief; *Mr. Wilson, Mr. Kelly* and *Mr. Maury* argued the causes orally.

*Messrs. Gilbert, Gilbert & McFadden, Mr. J. A. Poore,* and *Messrs. Gunn, Rasch, Hall & Gunn,* for Respondents, submitted a brief; *Mr. Poore* and *Mr. Carl Rasch* argued the cause orally.

*Mr. R. F. Gaines,* for Respondent Federal Land Bank of Spokane, submitted a brief, and argued the cause orally.

MR. JUSTICE ARNOLD delivered the opinion of the court.

This appeal involves four consolidated cases which were likewise consolidated for trial in the district court for Beaverhead county. The plaintiffs are the sons of William Montgomery, deceased, and were named in his will as beneficiaries. Montgomery died on October 24, 1919, and complaints were filed in these actions as follows: By George Hugh Montgomery on June

15, 1935, he having become 21 years old on February 26, 1931; by William George Montgomery on March 21, 1931, he having become 21 years of age on September 25, 1918, before the death of his father; by James Kenneth Montgomery, on August 18, 1931, two actions, he having become 21 years of age on August 26, 1926. The actions involve alleged mismanagement of the estate by the executor, J. H. Gilbert, one of the defendants. The final account of the executor was allowed and approved on February 23, 1926. Inasmuch as the complaints to some extent question the actions of the executor as being without authority, it is necessary that such portions of the will as are relevant to the cases be set forth.

The defendants Margaret Mary Montgomery Tucker and Helen Cecelia Montgomery Collins are daughters of the deceased, and Cecelia L. Montgomery is his widow. All of these defendants filed disclaimers prior to trial. The will of Montgomery was admitted to probate on November 25, 1919, at which time J. H. Gilbert was appointed executor under the will, and was discharged as such on final accounting February 23, 1926. The will of Montgomery was executed on June 6, 1916.

For a number of years Montgomery operated a large ranch in Beaverhead county and bought and sold cattle on an extensive scale. The provisions of his will, so far as they relate to these actions, are as follows:

"First: I direct that my executors, as soon as they conveniently can, pay all my just debts and funeral expenses. In this connection it is my will and I direct that if there be not sufficient funds on hand at my death to pay my said debts, that my executors, in their judgment, may sell such of my personal property as they deem best, either with or without an order of court, or if, in their judgment, so selling said property will hamper them in the conduct of said business as hereinafter directed, they are hereby authorized and directed to borrow such sums of money as may be necessary to pay said debts, and the payment of such loans is hereby made a charge against my estate, both real and personal, and the executors are authorized

to execute all necessary mortgages or other instruments as may be required to secure the same.

"Second: I give, devise, and bequeath one-third (⅓) of all my property, real and personal, to my wife, Cecelia L. Montgomery, in lieu of dower and her rights by succession. It is my will that my said wife permit her portion of the estate to remain in the hands of my executors, and after their discharge in the hands of the trustees hereinafter named, to the end that said property may be managed and operated as a whole and in the manner I have operated the same, until my youngest son becomes of age as hereinafter provided; she receiving annually one-third (⅓) of the net income of my whole estate if she shall demand same.

"Third: I give and devise to my son, James Kenneth Montgomery, all that certain piece or parcel of land known as the 'Old Home Ranch,' consisting of about four thousand (4,000) acres, located about eight miles Southwest of the Town of Wisdom, Montana, the dwelling upon which ranch is situated in section thirty-one (31), township three (3) south, range fifteen (15) West, M. M., together with all water rights thereto belonging, provided, however, that the said James Kenneth Montgomery shall not have the enjoyment or possession of the above devised real estate until my youngest son shall become of lawful age and this devise is also subject to the several bequests hereinafter made to each of my daughters.

"Fourth: I give and devise to my son William George Montgomery, all that certain piece or parcel of land known as the present home ranch, consisting of about four thousand two hundred (4,200) acres, and located about four and one-quarter (4¼) miles Southwest of Wisdom, Montana, together with all water rights belonging thereto, provided, however, that the said William George Montgomery shall not have the enjoyment or possession of the said property until my youngest son shall become of lawful age, and this devise is also subject to the several bequests hereinafter made to each of my daughters.

"Fifth: I give and devise to my son, George Hugh Montgomery, all that certain piece or parcel of land known as the 'Wisdom Ranch,' composed of the Ellis Ranch, the Ajax Pas-

ture, and the Schultz Ranch, making a total of about two thousand seven hundred and twenty (2720) acres, and all water rights belonging thereto, and I also give and devise to my said son, George Hugh Montgomery, all the real estate owned by me in the town of Wisdom, Montana, provided, however, that the said George Hugh Montgomery, shall not have the enjoyment or possession of the said property until my youngest son shall become of lawful age and this devise is also subject to the several bequests hereinafter made to each of my daughters.

"Sixth: I give and bequeath to each of my daughters, Margaret Mary Montgomery, Helen Cecelia Montgomery, Francis Elizabeth Montgomery, and Anna Eliza Montgomery, the sum of ten thousand dollars ($10,000) to be paid to each at her arrival at the age of twenty-one (21) years, and in case there are not sufficient funds to pay the said sums to my daughters, then and in that event the balance of said sums shall be raised by a sale of or loan upon and a lien against the real estate and each of my sons shall contribute equally to raise such sums as may be necessary to pay said bequests as they become due. In the event the trust estate herein created shall end by the reason of the arrival of my youngest son at twenty-one (21) years of age and the said bequests, or any of them, in this paragraph provided, to my said daughters shall not have been paid as herein provided, I direct that my said trustees shall retain in their hands the amounts, in money, of the unpaid bequests to my said daughters as in this paragraph described and the said trustees shall invest said sums in such manner as they shall deem best, and the said bequests, together with the accumulations thereof shall be paid to my said daughters as herein provided.

"Seventh: I give and bequeath all my bonds, stocks, money derived from insurance of my life and personal property, not herein otherwise disposed of or bequeathed, to my children, share and share alike.

"Eighth: All the rest, residue and remainder of my estate, real and personal, of which I shall be seized and possessed or to which I shall be in any way entitled, at the time of my death, and including all the foregoing legacies and devises that shall

lapse, or for any reason or cause fail to take effect under any of the provisions hereinbefore contained, I give, devise and bequeath to my children, share and share alike.

"Ninth: I hereby make, nominate, constitute and appoint J. B. Poindexter and J. H. Gilbert, both of Dillon, Montana, to be executors of this my will and direct that they serve without bonds.

"Tenth: I direct that my estate shall be settled as rapidly as possible, with due regard to the interest of my heirs and upon distribution, the said J. B. Poindexter and J. H. Gilbert shall become trustees of the property remaining. I direct that they shall hold and operate the same as such trustees for the benefit of my said heirs respectively in the same manner as I have heretofore managed said property and until my youngest son shall arrive at the age of twenty-one (21) years, and I give them full power to sell any part of the property as they shall deem best, and to borrow money for the operation of the business and execute such necessary instruments to secure such loans as may be required or deemed essential.

"It is my will that my said sons, respectively, in so far as it does not interfere with their proper school work, be made foreman of the respective ranches left to them, and that they shall have such authority and direction thereof, and of the business connected therewith as my said trustees shall determine to be for their best interests, to the end that [sic] shall be familiar with his respective ranch and shall have had some experience in the handling of the property before he shall receive the same in his own right.

"I further direct that my said wife shall be consulted by said trustees in their conduct of the said business.

"In the event that my youngest son living at my death shall die before reaching the age of twenty-one years, then the trust estate heretofore created shall determine and end upon the arrival at the age of twenty-one (21) years of the youngest of the remaining sons.

"Eleventh: It is my desire that my children shall be properly educated according to their station in life and to this end I

direct that my executors, or in the event that they have been discharged, my trustees, shall spend such amount or amounts as they shall deem proper and just in securing for my said children a liberal education, the extent of said education to rest entirely in the discretion of my said executors.

"Twelfth: It is my Will and I hereby direct that my said executors and trustees shall provide for the support and maintenance of each of my said children out of the income from my property, in keeping with their station in life, until he or she shall receive the devise or bequest herein provided.

"Thirteenth: My trustees are directed to borrow money whenever they deem it most beneficial or to the best interest of the estate, and the said loan or loans shall become a lien on the real estate.

"Fourteenth: It is my Will and that the property shall be managed, operated and held in the same manner as it is now managed, operated and held and that my boys, after receiving their education, shall return to the ranches and work the same under the direction of the trustees.

"Fifteenth: In the event of the death of any of my children herein named before final distribution by the court of [or?] final determination of the trust estate herein created, without children, the property devised or bequeathed to or owned by said child, shall be distributed share and share alike among the children surviving. If any child dies leaving lawful issue, such issue shall receive the share of its parent by right of representation."

Trial was had in all four actions before the Honorable W. L. Ford, district judge, which trial began May 17, 1937. On March 28, 1938, the court made findings of fact and conclusions of law. In view of the fact that this court must determine whether or not the findings of fact are supported by the evidence, we shall set forth in detail the court's findings of fact and conclusions of law:

"Findings of Fact.

"1. That defendant, the First National Bank of Dillon, is and at all times mentioned in the pleadings was a corporation

258

organized under the national banking laws, with its place of business at Dillon, Montana; that defendant, Federal Land Bank of Spokane, is and at all times mentioned in the pleadings was a corporation organized under the laws of the United States, with its place of business at Spokane, Washington; that defendant, Emma Peterson, is the wife of defendant, Alfred N. Peterson, and that defendant, Elizabeth A. Clemow, was the wife of George M. Clemow, who died prior to the trial of the above-entitled action.

"2. That William Montgomery died testate in Beaverhead County, Montana, on or about the 23rd day of October, 1919, and was, at the time of his death, a resident of said county and left estate therein consisting of real and personal property.

"3. That by an order of the above-entitled court, reciting that notice had been duly given of the time appointed for proving said will and for hearing said petition, according to law, to all parties interested, duly given and made on November 25, 1919, the last will and testament of said William Montgomery, deceased, was duly admitted to probate, and defendant, J. H. Gilbert, who was named therein as such, was appointed executor thereof, and thereafter, on said 25th day of November, 1919, duly qualified as such executor and letters testamentary were duly issued to him, and that thereafter he continued to act as such executor until the date of his discharge, by order of the above-entitled court duly given and made on February 23, 1926.

"4. That pursuant to an order of the above-entitled court, duly given and made on November 25, 1919, said executor did cause to be published in The Dillon Examiner, a weekly newspaper published in Beaverhead County, Montana, a notice to the creditors of said decedent, requiring all persons having claims against him to exhibit them, with the necessary vouchers, to said executor at the law office of T. E. Gilbert, Dillon, Montana, within ten months after the first publication of said notice, and which said notice was first published November 26, 1919; and that thereafter and on January 5, 1920, a decree of the above-entitled court was duly given and made adjudging that

due and legal notice to the creditors of said deceased had been given.

"5. That just prior to his death, the said William Montgomery had purchased a large number of cattle, then in course of delivery to said deceased, the purchase price of which amounted to the sum of $41,116.72, no part of which had been paid, and there were then outstanding and unpaid accounts and claims against said deceased, incurred by said deceased for labor, provisions and supplies, in the operation of his ranches, and for family, household and other purposes, amounting in the aggregate to the sum of more than $25,000.00

"6. That for many years prior to his death, the said William Montgomery, deceased, had done his banking business in and with the defendant, The First National Bank of Dillon, Montana, borrowing from said Bank from time to time large amounts of money when required in his ranching operations, for which he gave his promissory notes to said Bank, and at the time of his death was indebted to said Bank on promissory notes so given by him to said Bank, in the sum of $94,518.00. That his legal borrowing limit had been reached and no money was available with which to pay the said claims and accounts, or any part of them, or of the indebtedness against said deceased.

"7. That by the terms and provisions of the last will and testament of said deceased, the said J. H. Gilbert, as the executor thereof, was required to manage and operate, as a whole, and in the same manner as the deceased had operated his properties and ranches, until his youngest son, who was then 9 years old, should become of age; and Cecilia L. Montgomery, the surviving widow of said deceased, was to be consulted in the conduct of the business. But as regards available funds for that purpose, the said deceased left no money with which to pay the costs and expenses of such operation.

"8. That, in order to procure the necessary means for the payment of the purchase price due and owing for said cattle so purchased by the deceased, to carry on the farming and ranching operations as required by the terms of the will, and to pay some of the more pressing claims or accounts of creditors of

said deceased, there was borrowed from said defendant, The First National Bank of Dillon, Montana, in the name of said Cecilia L. Montgomery, the surviving widow of said deceased, for the use and benefit of said estate, the sum of $62,500.00, of which amount the sum of $41,116.42 was expended in payment of the purchase price of said cattle, purchased by the deceased prior to his death, and in the payment of other claims and accounts of said deceased.

''9. That thereafter and during the course of the administration of said estate, additional funds had to be borrowed and were borrowed from said defendant, The First National Bank of Dillon, Montana, by the said defendant, J. H. Gilbert, as executor of said estate, for the purpose of paying debts of said estate, and to enable him to conduct and carry on the operations of the properties of said estate directed and required by the terms of the decedent's will. That the amounts so borrowed by said executor from said Bank were lent to said executor by said Bank in good faith and for the purposes stated, and were, in good faith, used and expended by said executor in payment of debts of said estate and of the costs and expenses made necessary in the operation of the properties of said estate.

''10. That during the last year of decedent's life, the decedent sustained a loss in his business of $47,237.05, and owing to the depression and bad business conditions soon thereafter ensuing, the operations of the estate of said deceased were carried on at a loss, and money had to be and was borrowed, from time to time, by renewal of existing notes and the giving of additional notes, to enable said executor to carry on such operations as directed and required by the last will and testament of said deceased, which said moneys were borrowed from said defendant, The First National Bank of Dillon, Montana, in the course of its banking business.

''11. That by the terms of the last will and testament of said deceased, it was also provided that the sons of said deceased, after receiving their education, should return to the ranches of said deceased and said estate and work the same under the direction of said executor. That William G. Montgomery, one

of the sons of said deceased, was of age at the time of his father's death, and had been foreman in the operations of the properties of said estate under his father, and continued to act as such foreman and superintendent of said operations after his father's death, under said defendant, J. H. Gilbert, as executor, until the month of August, 1924, and during said time said William G. Montgomery, and his mother, the said Cecelia L. Montgomery, the surviving widow of said deceased, had full charge of, and control over, all of the operations of the properties of said estate under the supervision of said defendant, J. H. Gilbert, as such executor. That during all of said times the operations of said property were properly and efficiently carried on and conducted by said William G. Montgomery and the said Cecelia L. Montgomery under the supervision of said defendant, J. H. Gilbert, as such executor.

"12. That both the said William G. Montgomery and Cecelia L. Montgomery were fully advised and had full knowledge of the outstanding and unpaid claims and accounts incurred by the deceased during his lifetime for labor, provisions, and supplies in the operation of his properties and ranches, and for family, household and other purposes, and the amounts due and payable thereon. That all of said claims and accounts were audited and approved for payment by the said Cecelia L. Montgomery, and payment thereof directed by orders or requisitions in writing upon the said defendant, J. H. Gilbert, as such executor, and the vouchers, evidencing such payments down to the 21st day of February, 1921, were returned to said Cecelia L. Montgomery, who had them in her possession at the time of the filing of said executor's first account of his administration of said estate on the 13th day of May, 1924, and which account was settled, allowed and approved by this court on the 24th day of May, 1924.

"13. That within the time prescribed by said notice to creditors, duly verified claims against said estate were presented to said executor aggregating the sum of $169,914.64, and were thereafter allowed and approved by said executor and by the Judge of this court. That within the time so prescribed by said

notice to creditors, claims for the purchase price of said cattle, purchased by said deceased just prior to his death, and claims and accounts against said decedent and his estate for labor, provisions, and supplies in the operation of his ranches, and for family, household, and other purposes, were likewise presented, to and were paid by, said executor without the affidavit of their correctness prescribed by statute; but all such claims and accounts, so paid by said executor, were justly due, were paid in good faith, and the amounts so paid were the true and correct amounts of such indebtedness over and above all payments or set-offs, and that at the time of the making of such payments the estate of said deceased was solvent. That all of the said claims and accounts so presented, without affidavits of their correctness, and allowed and so paid, appear and are set forth in said executor's said first account, and the payments so made by him were approved by this court by its order duly given and made on the 24th day of May, 1924, settling, allowing, and approving said account after due notice thereof having been given.

"14. That on the 3rd day of April, 1920, said executor duly returned to the above-entitled court an inventory of all of the property of said estate, duly appraised by appraisers appointed by the above-entitled court.

"15. That plaintiff is a son of said William Montgomery, deceased, and is named as a beneficiary in the will of said deceased, and this action is based upon the provisions of said will, prosecuted herein for the recovery of the property bequeathed and devised to him by the provisions of said will.

"16. That a true copy of the last will and testament of said William Montgomery, deceased, is attached to plaintiff's complaint marked Exhibit 'A'.

"17. That said executor took possession of all of the real and personal property of said deceased, including the sum of $40,-000.00, the proceeds of a policy of insurance on the life of said deceased, and in good faith managed and operated the same as directed by the terms of the last will and testament of said deceased, and in good faith disbursed the said $40,000 of life

insurance in payment of the debts of said deceased and his estate.

"18. That on May 13, 1924, said executor filed in the above-entitled court his first account of his administration of said estate, which said account was, after due notice thereof given, by an order of the above-entitled court duly given and made on May 24, 1924, settled, allowed and approved.

"19. That on May 27, 1924, said executor filed in the above-entitled court his petition for an order for permission and authority of said court to sell the lands of said estate, and, after due notice given, pursuant to law and the order of said court, by an order of said court duly given and made on July 5, 1924, said executor was authorized to sell, either in one parcel or sub-divisions, as he should judge most beneficial to said estate, all of the real estate belonging to said estate, at private sale, to the highest bidder, for cash or on credit, whichever might be most beneficial to said estate, and which said real estate is particularly described in said order.

"20. That thereafter, and on April 20, 1925, said executor made to said court a return of his proceedings under said order of sale, and reported to said court that he had published and posted, in the manner provided by law and the order of said court, due and legal notice of the sale and call for bids for said property; that he had received only two bids therefor, which were attached to said return and marked Exhibits 'A' and 'B' and made a part thereof; that Alfred N. Peterson had made the only bid for the real estate described in his said bid, and that George M. Clemow had made the only bid for the property in his bid described, and that said executor had accepted said bids.

"21. That thereafter, and after due notice, as required by law and the order of said court, said return of sales came regularly on for hearing before said court, and after hearing it was, by an order of said court duly given and made on May 2, 1925, by the court found that Alfred N. Peterson had bid the sum of $82,665.20 for the certain real estate described in his said bid, and that George M. Clemow had bid the sum of $41,749.00 for the certain real estate described in his said bid, and by said

order such sale was by said court ordered, adjudged and decreed that the sales of the real estate to George M. Clemow and Alfred N. Peterson, described in said return, be and the same were by said order confirmed and approved, and said executor was directed to execute to said persons proper conveyances for said lands.

''22. That said executor conveyed by deed to said George M. Clemow the lands described in his said bid and by the court ordered sold to him, and thereafter, and on August 17, 1925, said George M. Clemow, and Elizabeth Clemow, his wife, conveyed to Jules Wenger the portion of said lands described in Exhibit 82A, and In Book 90 of Deeds; page 328, records of Beaverhead County, Montana, and said executor received in cash the full value thereof, namely: $15,630.93. That in order to obtain the money for such purchase, the said Wenger mortgaged to defendant, Federal Land Bank of Spokane the lands so by him purchased from George M. Clemow, together with other lands owned by said Wenger. That said George M. Clemow mortgaged the balance of said lands so conveyed to him by said executor, and not by him sold to Jules Wenger, to defendant, Federal Land Bank of Spokane, to secure a loan of $25,-000.00, made to him by said Bank, and said executor received in cash the full amount thereof, less necessary disbursements to securing said loan, namely: $23,465.00. Said executor also conveyed by deed to said Alfred N. Peterson the lands described in his said bid and by the court ordered sold to him, and said Peterson thereafter borrowed from defendant, Federal Land Bank of Spokane, the sum of $25,000.00, and mortgaged said lands to said Bank as security therefor, and said executor received in cash the amount of said loan, less necessary disbursements, in securing said loan, namely: $23,450.00.

''23. That the said sales were not sales in fact but in form only, and made in the manner in which they were made for the purpose of procuring funds with which to pay the debts of said estate when it was found impossible to obtain purchasers for said lands. That funds were needed for the payment of debts of said estate and such funds could only be obtained from the

defendant, Federal Land Bank of Spokane, by way of a loan by the said bank secured by mortgage upon real property to the title owner thereof. That with the exception of the part of the land sold by said Clemow to said Jules E. Wenger, the said Clemow executed and delivered to defendant, J. H. Gilbert, Trustee, a deed in which the grantee's name was omitted and left blank, for all of said lands so conveyed to him, other than the part thereof conveyed by said Clemow to said Wenger, subject to the mortgage executed by said Clemow to said defendant Federal Land Bank of Spokane, and that the said lands, so covered by and described in said deed delivered to said J. H. Gilbert, Trustee, are held by him as such Trustee, first, to secure the payment of the unpaid balance of said mortgage to defendant, Federal Land Bank of Spokane, and second, to secure the payment of the indebtedness owing from said J. H. Gilbert, Trustee, to defendant, The First National Bank of Dillon, Montana, and Daly Bank and Trust Company of Anaconda, Montana. That the said Peterson also executed and delivered to said defendant, J. H. Gilbert, Trustee, a deed in which the grantee's name was omitted and left blank for all of said lands so conveyed to him, subject to said mortgage so executed by said Peterson to defendant, Federal Land Bank of Spokane, and said lands so described in said deed, are held by said defendant, J. H. Gilbert, as such trustee, first, to secure the payment of the unpaid balance of said mortgage to defendant, Federal Land Bank of Spokane, and, second, to secure the payment of the indebtedness from said J. H. Gilbert, Trustee, to defendant, The First National Bank of Dillon, Montana, and Daly Bank and Trust Company of Anaconda, Montana.

"24. That Cecelia L. Montgomery, the surviving widow of said deceased, renounced the benefits of the legacies and devises made in her favor in the will of said deceased, and elected to take in lieu thereof her dower in the properties of said estate, and, at the time of the trial of this action, had disclaimed any and all right, title or interest in or to any part of the properties of said estate. That on the 17th day of July, 1923, she had received from the funds of said estate the sum of $22,709.40

for the support and maintenance of herself and her family, without any order having theretofore been made by the court for such family allowance. That on the said 17th day of July, 1923, the said J. H. Gilbert, as such executor, and said Cecelia L. Montgomery, made an agreement providing that authority for the payment of such family allowance should be obtained from the court during the course of the administration of said estate, which was done, and the amount paid to and received by the said Cecelia L. Montgomery, by way of family allowance during the administration of said estate was the sum of $53,344.27.

"25. That on the said 17th day of July, 1923, the amount of the indebtedness of said estate to said defendant, The First National Bank of Dillon, Montana, was, as stated in said agreement, approximately the sum of $173,000.00 and in order to enable said executor to sell and dispose of such property of said estate as might become necessary to be sold for the purpose of obtaining funds to pay the indebtedness of said estate, the said Cecelia L. Montgomery agreed to convey and did convey to said defendant, J. H. Gilbert, as executor, in trust, her dower right in and to the properties of said estate, as collateral security, to secure the payment of said indebtedness, the same, however, not to be used for such purposes until all of the other property of said estate should have been so applied, and if not so applied to be reconveyed to said Cecelia L. Montgomery.

"26. That at the time of his death, the said deceased held contracts for the sale to him by the State of Montana of lands situate in Sections 4, 9, 15 and 16, in Township 3 South of Range 15 West, M. P. M., the purchase price of which was payable in annual installments, but the purchase of said lands was not completed by the said executor and no title to said land was acquired, and the said contracts were permitted to lapse because the unpaid balance of the purchase price of said lands, then due and owing and thereafter to become due and owing to the State of Montana under said contracts was greatly in excess of the then value of said lands, for which reason no further payments were made on said contracts, and the same were cancelled and terminated, and were and had been so cancelled and terminated

at the time of the conveyance of the properties of said estate to said Clemow and Peterson.

"27. That on February 9, 1926, said executor filed in said court his final account and petition for distribution, wherein he charged himself with the full bid and sale price of the lands ordered sold to said Peterson, namely, $82,665.20, and with the full bid and sale price of the lands ordered sold to said Clemow, namely, $41,749.00, and also with the full value of the then remaining personal property of said estate, namely, $13,293.75, plus $100.00, the value of 20 shares of Southern Montana Telephone Company stock.

"28. That thereafter and after due notice given, and by order of said court duly given and made on February 23, 1926, said final account of said executor was settled, allowed and approved as rendered, and said executor was discharged from his trust as executor.

"29. That neither the first nor the final account of said executor was accompanied by vouchers evidencing the payment of the amounts shown by said accounts to have been paid. That all of such vouchers relating to disbursements made by said executor prior and down to the 21st day of February, 1921, were then in the possession of said Cecelia L. Montgomery, the surviving widow of said deceased, but vouchers showing that all moneys and funds received by said executor, in the course of his administration of the estate of said deceased, from all sources in the course of the administration of said estate, were used and expended by said executor for the use and benefit of the estate of said deceased in payment of debts, the operating expenses of the properties of said estate, and for the support of the family, and all such vouchers were either produced at the trial of this cause, or conceded and admitted to be in existence and available.

"30. That since the discharge of said defendant Gilbert, as such executor, said Gilbert has been in charge and control as Trustee, of all of the property remaining in said estate, and in good faith managed and operated the same as directed in the last will and testament of said deceased, and does now hold and

operate the same as such trustee for the benefit of the creditors of said trusteeship, and the legatees and devisees named in said last will and testament of said deceased.

"31. That the defendants, Alfred N. Peterson, Emma Peterson and Elizabeth M. Clemow, have no right, title or interest in any of said lands or property."

And from the foregoing Findings of Fact, the court makes and deduces the following

"Conclusions of Law.

"1. That under the rule of law laid down by the Supreme Court of Montana in the case of *Clark* v. *Clark*, 64 Mont. 386, 210 Pac. 93, adopted and followed by the United States Circuit Court of Appeals, of the Ninth Circuit, in the case of *Montgomery* v. *Gilbert*, 77 F. 2d 39, the plaintiff has failed to make a case, either by his pleadings or proof, of which this court, as a court of equity, can or may take cognizance, or of or over which it has any jurisdiction.

"2. Aside from the jurisdictional question, the complaint fails to state a cause of action and the evidence is insufficient to authorize the interposition of a court of equity and grant equitable relief upon the facts pleaded by the plaintiff and the evidence adduced in support thereof.

"3. That the order of this court admitting the last will and testament of said deceased to probate, reciting that notice had been duly given of the time appointed for proving said will and for hearing of the petition for its admission to probate, according to law, to all parties interested, and this action being based upon the terms and provisions of said will, and for the recovery by plaintiff of the property of said deceased therein bequeathed and devised to him, the plaintiff is estopped and precluded from saying or contending that the said will was not legally admitted to probate and the said defendant, J. H. Gilbert, legally and regularly appointed the executor thereof.

"4. That there was no conversion of any of the funds or property of the estate of said deceased by the said defendant, J. H. Gilbert, as executor of the last will and testament of said deceased, or by any of the other defendants in said cause, and

there was not actionable fraud in the administration of said estate by the defendant, J. H. Gilbert, as such executor, or by any of the other defendants therein, and no collusion between said defendant Gilbert and said defendant, The First National Bank of Dillon, Montana, or any of the defendants, to deprive the plaintiff of any of the property bequeathed or devised to him by the terms of his father's will.

"5. That plaintiff's alleged cause of action is barred by the provisions of Sections 10042, 10048, 10245 and 10303, Revised Codes of Montana, 1935.

"6. That plaintiff is not entitled to the relief prayed for or any relief herein.

"Dated this 28th day of March, 1938.

"WILLIAM L. FORD,
"Judge presiding."

Appropriate judgments were entered upon the foregoing findings and conclusions in the consolidated actions. On appeal the plaintiffs specified as errors the action of the court in entering judgment for the defendants and in refusing to adopt the proposed findings of the plaintiffs, and in making the findings heretofore set out.

The actions sought to gain possession of property devised to plaintiffs under the will of William Montgomery, which, so far as relates to real property, has been since the decree of distribution, and now is, held in trust by J. H. Gilbert for the satisfaction of a mortgage debt to the defendant Federal Land Bank of Spokane and an indebtedness from Gilbert, as trustee, to the defendant First National Bank of Dillon, and a similar indebtedness to the Daly Bank & Trust Company of Anaconda.

The alleged fraud consists of acts of the executor Gilbert in the administration of the estate through having himself appointed executor without notice to the minor plaintiffs; without notice to the co-executor, Poindexter, who was then a resident and public officer of the Territory of Hawaii, and who at no time asserted his right to appointment as co-executor; borrowing money for the estate when it was not needed; selling property to pay debts which were not valid or proper claims against the

estate; failing to file a bond on qualifying as executor; failing to file accounts and inventory within the time prescribed by law; failing to get confirmation of the court of personal property sales; selling real estate to "dummy" purchasers for less than 90 per cent. of the appraised value, and thereafter causing the "dummy" purchasers to borrow money from the defendant Federal Land Bank secured by mortgage on the land sold to such purchasers, the money from the loan having been used to pay off debts of the estate; and otherwise employing dilatory and irregular tactics in the administration of the estate, resulting in losses.

The action of the plaintiff George H. Montgomery was first tried before the United States District Court of Montana, which action was dismissed upon its merits. On appeal to the United States Circuit Court of Appeals the judgment was affirmed (*Montgomery* v. *Gilbert,* (9 Cir.) 77 Fed. (2d) 39), on the ground that the court below lacked jurisdiction, but the circuit court also found that the state courts have power to correct or set aside its decrees in probate. The Circuit Court of Appeals likewise found and held that a case was not made out which showed fraud, cognizable in a court of equity.

Nowhere in any of the complaints do we find allegations that were supported by evidence at the trial showing extrinsic or collateral fraud as defined in the Montana cases of *Clark* v. *Clark,* 64 Mont. 386, 210 Pac. 93, and *Hoppin* v. *Long,* 74 Mont. 558, 575, 241 Pac. 636.

In view of the trial court's conclusions of law Nos. 1 and 5, which we hold to be correct, it would be needless and purposeless to set out in detail the evidence which we have reviewed. We do observe, however, that the widow and her children, the plaintiffs herein, continued to reside on the ranch property of the testator for more than five years after his death. The widow drew checks against estate funds for living expenses and other costs of ranch operations, receiving in all for such purposes over $50,000. She and the plaintiffs virtually operated the ranch business under the supervision of the defendant executor,

and were consulted by him frequently concerning the administration of the estate.

The widow at the trial conceded that the executor did the best he could with the administration, and that she never objected to his administration and had no reason for objecting. William Montgomery, one of the plaintiffs and oldest son of the testator, testified that after his father's death he remained on the ranches for nearly five years, acting as manager under the direction of the executor; that he assisted in making the inventory and that it was correct; that he knew of a number of efforts of Gilbert, the executor, to sell the ranches, without success; that all cattle were sold at the best prices obtainable, the market price; that he made all deliveries of cattle sold; that Gilbert consulted with him and his mother frequently about the ranch business. The testator executed his will more than three years before his death while he was apparently in the full vigor of life and actively engaged in the affairs of his calling, and that he named J. H. Gilbert executor to serve without bond. He reposed great faith and confidence in him, as the will gave him wide and discretionary powers to use in the administration of the estate similar to those which the testator himself had employed in carrying on his livestock business.

Under such conditions an executor is required to use reasonable diligence and act in entire good faith in performing the duties of his trust. He is, however, not an insurer of the safety of the estate; nor is he expected to be infallible. It has been held that it is the policy of the courts to sustain, if possible, irregular acts of executors or administrators where done in good faith and without detriment to the estate. (*Duffy* v. *McHale*, 35 R. I. 16, 85 Atl. 36.) As was said by this court in *In re Astibia's Estate*, 100 Mont. 224, 46 Pac. (2d) 712, 716: "An administrator is chargeable with the whole of an estate coming into his possession at the value of the appraisement thereof, but is not to suffer loss by reason of decrease in value or destruction, without his fault, of any part of the estate. He is not an insurer; therefore he is liable only for losses which

are the consequence of bad faith or the want of due diligence in handling the estate.''

In the instant case the executor had technical possession of the personal property, and the heirs had actual possession and use thereof under the terms of the will for nearly five years. In these circumstances would they be unacquainted with any loss or depreciation thereof? In the end they voluntarily departed from the ranches.

The record discloses a number of irregularities on the part of the executor, such as delays and omissions. Suitable penalties are provided for such lack of strict observance of the statutory requirements under the Montana Codes, which may, if warranted, result in removal of an executor. Here no such action was taken and, in the absence of a positive showing of detriment to the estate, or fraud upon those interested in the estate, there would be no liability on the part of the executor in an action such as we have here.

The plaintiffs were residents in Beaverhead county at the time the will was probated, living on the property involved in the estate. Their mother, who was the widow of the testator, was frequently consulted by the executor pursuant to the directions in the will. This court recognizes the fact that property values fluctuated greatly over a period of time embraced within the administration of this estate. A recital in a petition for probate of a will as to value of property, not supported by subsequent changes, would not necessarily indicate fraud on the part of the executor. The accounts of the executor, though filed belatedly, were approved by the court approximately five years before the first of these actions was filed.

At the time the will was admitted to probate the court found that the notices required to be given by the clerk, which invest the court with jurisdiction, had been given. There was no showing to overcome the effect of this order. The trial court rightly found that, though the sale by the executor of certain real estate was merely a simulated sale for the purpose of mortgaging the property through the purchasers to the Federal· Land Bank and thus obtaining money to pay debts of the estate,

yet the property had been reconveyed to the executor in trust. We do not condone such practice. The Montana statutes provide methods for borrowing money on behalf of an estate and they should be rigidly followed. The Federal Land Bank acted in good faith in making the loan and relied upon the record. Here again, no damage resulted to those interested, despite the fact that the proceeding was highly irregular. These matters, however, appear of record and cannot be considered as extrinsic or collateral fraud which would entitle the plaintiffs to relief after the time fixed by the statute has expired for bringing actions for such relief. The plaintiffs knew, or could have known, of the things they here complain of within the time fixed by law for bringing action.

Under section 10303, Revised Codes, the settlement of an executor's account is conclusive, but one laboring under disability may within sixty days after discovery of the facts constituting fraud, move to reopen or set aside the decree of settlement. The previous settlement is prima facie proof of the correctness of the account, the burden resting upon the one who alleged fraud to prove, not only that there was fraud and injury, but also that there was reason for his failure to discover the facts. (*In re Eakins' Estate*, 64 Mont. 84, 208 Pac. 956; *Kerrigan* v. *O'Meara*, 71 Mont. 1, 227 Pac. 819.) Section 10246, Id., fixes the time for a minor to bring action for relief under section 10245, at any time within three years after removal of his disability. (*Lamont* v. *Vinger*, 61 Mont. 530, 202 Pac. 769.)

Here the plaintiffs not only failed to prove but also did not allege facts sufficient to show that they used diligence to detect the alleged fraud, and why it was not discovered sooner. In such circumstances the plaintiffs are presumed to have known whatever with reasonable diligence they might have discovered. (*Lasby* v. *Burgess*, 88 Mont. 49, 289 Pac. 1028.)

The trial court found that former executor Gilbert, as trustee, was holding the property involved in this action in trust for the creditors and the heirs. The will provided that the trusteeship should terminate as follows: "I direct that they shall hold

and operate the same as such trustees for the benefit of my heirs respectively in the manner as I have heretofore managed said property and until my youngest son shall arrive at the age of 21 years, and I give them full power to sell any part of the property as they shall deem best, and to borrow money for the operation of the business and execute necessary instruments to secure such loans as may be required or deemed essential.''

At the conclusion of the several devises to the sons, plaintiffs herein, we find the following words: ''provided, however, that the said [naming son] shall not have the enjoyment or possession of the said property until my youngest son shall become of lawful age and this devise is also subject to the several bequests hereinafter made to each of my daughters.''

The bequest to each of testator's daughters was $10,000 cash, payable when they became 21 years of age. The will provided that if there was not sufficient cash to pay the bequests, the balance should be raised by a sale of or loan upon and a lien against the real estate, and each of ''my sons shall contribute equally to raise such sums as may be necessary to pay said bequests as they become due.''

The sixth paragraph of the will recites, among other things: ''In event the trust estate herein created shall and by reason of the arrival of my youngest son at 21 years of age and the said bequests, or any of them, in this paragraph provided, to my said daughters shall not have been paid as herein provided, I direct that my trustees shall retain in their hands the amounts of money of the unpaid bequests to, my said daughters.''

The decree of settlement of final account in the probate proceedings, dated February 23, 1926, after directing application of the balance of cash on hand toward payment of the claims of the First National Bank of Dillon and Daly Bank & Trust Company of Anaconda, and attorneys' fees, found that there was a balance due on the claims of the foregoing bank creditors of $53,411.64, with interest. Thereafter this debt was carried as a trusteeship account. The creditors were not parties to the petition for closing the estate; hence the contention of appellants that they waived the balance due on their

claims is untenable. Both the statute and the will provide that claims are a charge against the estate. The daughters filed disclaimers as to their bequests under the will. The defendant Gilbert submitted on the trial an accounting of his trusteeship, but the court made no settlement of such account. Apparently such accounting was for the purpose of attempting to justify the continuance of the trusteeship. The trustee must account to the district court sitting in probate, covering all his acts as trustee under the will; this being the exclusive method. (Sec. 10352, Rev. Codes; *Philbrick* v. *American Bank & Trust Co.*, 58 Mont. 376, 193 Pac. 59. See, also, *In re Harper's Estate*, 98 Mont. 356, 40 Pac. (2d) 51.) The will governs the trusteeship and the time for termination thereof. The fact that there are debts, as above indicated, which are or may be secured by mortgage, under the terms of the will, is no ground for continuing the trusteeship. The trustee contends that the above mentioned debts to the banks are not secured by mortgage. The will empowers him to execute such mortgage, and the district court, at the time of the accounting, if it finds any other debts due arising out of the trusteeship, may require the execution of a mortgage securing them. The heirs are entitled to the several properties described in the will, subject to the Federal Land Bank mortgage, and the debts to the First National Bank of Dillon, and the Daly Bank & Trust Company of Anaconda, above mentioned, and any other such debts that the court may find due and valid arising under the trusteeship, upon proper accounting as above outlined.

As above pointed out, the plaintiffs not only lived on the premises involved herein, but had direct and constant participation in the administration of the affairs of the estate for approximately five years after the death of the testator. Action was not taken to set aside the decree of settlement of final account until the lapse of approximately five years. Not only did the plaintiffs fail to show that the executor concealed matters from them which they should have known, but the record definitely discloses admissions on the part of some of the plaintiffs that the executor co-operated with them to the fullest extent

and was always ready to discuss the affairs of the estate with them, and make any disclosures of his administration.

The judgment of the trial court is modified in these respects only: The defendant J. H. Gilbert is ordered to render an accounting of his trusteeship, and after executing mortgage securing the debts due to the above mentioned banks, and such other debts, if any, due from the trusteeship, he shall turn the estate properties over to the devisees under the terms of the will. As thus modified, the judgment is affirmed. The parties shall pay their own costs on appeal.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN, ERICKSON and HONORABLE H. H. EWING, District Judge, sitting in place of MR. CHIEF JUSTICE JOHNSON, disqualified, concur.

## ON MOTION FOR REHEARING.

(Filed December 3, 1940.)

MR. JUSTICE ARNOLD delivered the opinion of the court.

Respondents in their petition for rehearing of the modified portion of the above opinion point out that the court directed the execution of a mortgage securing the claims of the creditor banks and object to such proceeding. We suggested this method, not as an exclusive procedure for getting the estate in shape for closing, but as being a method compatible with the terms of the will. It is true that the trustee or creditors have their remedy in applying to the probate court under the statute for sale of property to satisfy the debts, but that proceeding must be taken in the district court and not here.

Respondents also contend that we were in error in stating in our opinion that at the settlement of the final account there was due the two banks the sum of $53,411.64. We based this statement upon the following paragraph in the decree of the probate court settling the account: " * * * and that there is on hand at this time the sum of $130,700.36 in cash from which there is to be deducted the sum of $4,000 attorney's fees,

leaving a balance in cash in the hands of the said executor of $126,700.36 to apply on the claims of the First National Bank of Dillon and Daly Bank and Trust Company of Anaconda, leaving a balance of $53,411.64, together with interest due upon said claims."

Respondents point out that the final account of the executor filed on February 9, 1926, and settled, allowed, approved on February 23, 1926, shows an indebtedness to the two above named creditors of $180,112. There can be no dispute as to this. The confusion arises on account of the fact that in reporting assets on hand available for the payment of these claims, the executor treated as cash the property of the estate set out in his accounting. This appears in Finding No. 27 of the trial court, fully set out in the original opinion. It appears that after the settlement of the final account the executor applied $33,000 to the claim of the First National Bank of Dillon, and $15,000 on the claim of the Daly Bank and Trust Company, and otherwise the direction of the court in the final decree as to the payment of the bank claims was not carried out. These sums, aggregating $48,000, were obtained from the Federal Land Bank of Spokane on mortgages covering the land "sold" by the executor to Peterson and Clemow, which sales we have declared invalid.

The trial court's findings that the trustee was holding this ■ property as security for the payment of the claims against the estate is fully supported by the evidence. This doubtless was his reason for reporting the property in his final account as cash on hand. However, since we have held, as did the trial court, that the sales were invalid we must and do likewise hold that the property cannot be applied to the payment of claims except by the procedure outlined in the statutes. Both creditors and heirs have the right to insist that legal procedure in this regard be followed and that the property be converted to cash by probate sales.

The creditors, of course, cannot be prejudiced by the failure or inability of the executor to carry out the direction in the final decree as to payment of their claims. These claims can

only be discharged by payment. Upon the accounting of the trustee, as ordered in the foregoing opinion of this court, he may show what amounts he has paid upon the bank claims after settlement of the final account.

As modified by this addendum, the original opinion will stand.

MR. JUSTICE MORRIS and HONORABLE H. H. EWING, District Judge, concur.

ASSOCIATE JUSTICES ANGSTMAN and ERICKSON:

Since the modified opinion of this court was filed herein, both parties have filed petitions for rehearing. We have given careful consideration to the arguments contained in both petitions and have grave doubts concerning the correctness of some of the questions treated in the opinion as modified by the addendum, and believe therefore that the petitions for rehearing should be granted and the entire case set down for reargument.

NOTE: The remittitur in the above case was issued on December 4, 1940, and on January 14, 1941, appellants filed a petition for recall of the remittitur and for a rehearing. On January 27, 1941, the court made the following order, signed by Associate Justice Morris and Honorable H. H. Ewing, District Judge, who sat in the case in place of Mr. Chief Justice Johnson, disqualified, Mr. Justice Arnold, the writer of the opinion, having in the meantime retired from office: ''Appellants' motion to recall remittitur is hereby denied.'' Associate Justices Angstman and Erickson concurring in the order for the following reason: ''We concur in the above order for the reason that, if the remittitur were recalled, the motion for rehearing would fall because of an equal vote on the motion. (*Gas Products Co.* v. *Rankin*, 63 Mont. 372, 207 Pac. 993, 24 A. L. R. 294.)''