*THE HON. CHARLES H. COOPER,
THE HON. WILLIAM L. HOLLOWAY,
THE HON. ALBERT J. GALEN,
THE HON. ALBERT P. STARK,
†THE HON. WELLINGTON D. RANKIN,
} Associate Justices.

KERRIGAN, RESPONDENT, v. O'MEARA, APPELLANT.

(No. 5,435.)

(Submitted May 27, 1924. Decided June 17, 1924.)

[227 Pac. 819.]

*Limitations of Actions—Fraud—Suspension of Limitation Until Discovery of Fraud—Burden on Party Invoking Exception.*

Action on Obligation not Founded upon Writing—Limitation.
1. *Semble:* An action to recover money received by defendant from her husband with knowledge that it belonged to plaintiff and that it had been taken from him by the husband by threats and intimidation, thus constituting her a trustee *ex maleficio,* would seem to fall within the provision of subdivision 3, section 9031, Revised Codes of 1921, declaring that an action upon an obligation or liability, not founded upon an instrument in writing, other than a contract, account or promise, must be commenced within three years.

---

*Resigned August 30, 1924.
†Appointed August 30, 1924, to serve unexpired term of ASSOCIATE JUSTICE COOPER, resigned.

Trusts—"Fiduciary or Confidential Relation"—Definition.

    2. The term "fiduciary or confidential relation" is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another, and precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed. In such relation the party in whom the confidence is reposed, if he voluntarily accepts it, may take no advantage of the other party without the latter's knowledge or consent.

Fraud—Limitations of Actions—Action Accrues When—"Discovery."

    3. In order to make applicable the provision of subdivision 4 of section 9033, Revised Codes, that in an action for fraud the cause of action shall not be deemed to have accrued until discovery by plaintiff of the facts constituting the fraud, plaintiff must show, in the absence of a relation of trust or confidence between the parties which imposed upon defendant the duty of making a full disclosure of the facts, some active affirmative concealment of the fraud by defendant, something said or done to continue the deception or to prevent inquiry or discovery, else the running of the statute which limits the time within which the action may be brought to two years is not postponed.

Limitations of Actions—When Statutes Begin to Run.

    4. As a general rule, the statute of limitations begins to run from the time the right of action accrues and not when the plaintiff, who was ignorant before, comes to a knowledge of his rights.

Fraud—Limitations of Actions—Burden on Party Invoking Statutory Exception.

    5. One who relies on the exception to the provision of section 9033, Revised Codes of 1921, to the effect that while an action for fraud must be commenced within two years, the cause of action shall not be deemed to have accrued until discovery of the facts constituting the fraud, must show the time and the circumstances of the discovery, to enable the court to determine whether by ordinary diligence it might not have been made before, his simple statement that it was not made until the limitation had run being insufficient.

Limitations of Actions—Nature of Statutes.

    6. Statutes of limitation promote repose by giving security and stability to human affairs; they stimulate to activity and punish negligence and supply the place of evidence destroyed by time by a presumption which renders proof unnecessary.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

ACTION by John Kerrigan against Margaret O'Meara. Judgment for plaintiff and defendant appeals. Reversed and remanded, with directions.

*Messrs. Walker & Walker* and *Mr. C. S. Wagner,* for Appellant, submitted a brief; *Mr. Frank C. Walker* argued the cause orally.

*Messrs. Stagg & Stagg, Mr. C. S. Wallace* and *Messrs. Wheeler & Baldwin,* for Respondent, submitted a brief; *Mr. Jas. H. Baldwin* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by the defendant Margaret O'Meara from a judgment entered upon the verdict of a jury in favor of the plaintiff John Kerrigan. A number of errors are assigned and argued by counsel for defendant but the case turns upon whether plaintiff's cause of action is barred by the statute of limitations.

The facts relied upon for recovery and substantially as set forth in the second amended complaint, as amended, are that Peter T. McDermott was indebted to plaintiff and John H. O'Meara jointly in the sum of $12,000 and interest. The money was collected from McDermott by H. L. Maury, Esq., the attorney for plaintiff and O'Meara. At a meeting held July 28, 1911, at Mr. Maury's office, there were present plaintiff, John H. O'Meara, Margaret O'Meara, his wife, and Mr. Maury. On that occasion, according to plaintiff O'Meara "by force, intimidation, and threats, with a loaded firearm," compelled Maury to pay him $10,388, and by the same means O'Meara drove plaintiff from the room and prevented him from receiving any part of the money. On the same day O'Meara turned over to his wife, the defendant, $5,000 of the money he had received from Maury. Plaintiff alleges that she received the money with full knowledge of all the facts and converted the same to her own use; that "she knew that the money so received by said John H. O'Meara and the portion of the same received and converted by her, as aforesaid, was a trust fund in the hands of her said husband for the use and benefit of the said John Kerrigan and John O'Meara, and she received the said sum of $5,000 so received from her husband, John H. O'Meara, as aforesaid, without the knowledge or consent of the plaintiff herein, and she has at all times since then held and she

now holds said money for her own use and benefit and has at all times refused and now refuses to recognize plaintiff's right thereto, or any part or portion of the same, and has at all times refused, and now refuses, to pay said money so received by her, or any part or portion of the same, to plaintiff, and he has never, at any time, or at all, received any payment on account thereof; that this plaintiff did not know, prior to the twenty-fourth day of July, 1916, that said defendant had received any portion of said money from the said John H. O'Meara, as aforesaid, or otherwise or at all, or that she had said money, or any part or portion of the same." "Wherefore, plaintiff demands judgment against defendant in the sum of $5,000, together with interest thereon at the legal rate from the twenty-eighth day of July, 1911, and for costs of this action."

By answer defendant denied all the allegations of plaintiff's complaint. Among other affirmative defenses she alleged that this action was not commenced until September 8, 1917, and pleaded the statute of limitations as a bar to plaintiff's recovery. Plaintiff admitted that the action was not commenced until the time alleged by defendant but denied the plea as to the statute of limitations.

Upon the trial plaintiff gave evidence in substantial compliance with the allegations of his complaint. Respecting the occurrence in Maury's office he said O'Meara "threatened to kill the two of us, myself and Maury, and reached for his gun and ordered me out of the room. Safety first, I went." As to his knowledge of the receipt of the money by defendant he gave this testimony and none other: That on July 24, 1916, upon the trial of another lawsuit (of the character of which we have not any information), he heard Mrs. O'Meara testify that she received $5,000 of the money in question as a gift from her husband. "That is the first time I positively knew she had received a portion of these funds." Defendant admitted having been present at Maury's office on July 28, 1911, and that her husband had turned over to her the $5,000 in question on that day; also that on July 24, 1916, she had testified to receiving that sum of money from her husband; otherwise she

denied plaintiff's testimony throughout. She denied specifically that at Maury's office she had heard a conversation in which plaintiff claimed an interest in the money about to be paid to O'Meara. She said: "There was no conversation of that kind or character that day. * * * There was no discussion had at that time with reference to Kerrigan's having an interest in the $10,000 that was to be collected by O'Meara. Maury opened the door and John left, and Kerrigan left too. My husband never packs a gun." She denied that plaintiff had claimed an interest in the money at any time; on the contrary affirmed that he had said he had no interest in it.

While a recitation of this testimony is not essential in view of the result reached it is given to show the condition of the record.

Is the alleged cause of action barred by the statute of limitations?

By the provisions of subdivision 3 of section 9031, Revised [1] Codes of 1921, "An action upon an obligation or liability, not founded upon an instrument in writing, other than a contract, account, or promise," must be commenced within three years. Upon the face of the complaint that statute would seem to be controlling against the plaintiff. (*Schaeffer* v. *Miller*, 41 Mont. 417, 137 Am. St. Rep. 746, 109 Pac. 970.) But this his counsel deny. They rely upon section 9033, Revised Codes of 1921, which provides that the actions therein mentioned may be commenced within two years; subdivision 4 thereof relates to "an action for relief on the ground of fraud or mistake, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

For the purposes of this decision we shall assume to be correct plaintiff's position that defendant in receiving the money as she did became an involuntary trustee thereof. "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." (Sec. 7886, Rev. Codes 1921.) At the outset of the trial a controversy arose between counsel as to whether this action was at law or in equity. After some

discussion counsel for plaintiff asserted it to be at law. Upon this assurance the court retained the jury which had been impaneled and proceeded with the trial, which was conducted by court and counsel as one in damages for a conversion. But whether the action was at law or in equity the same result is reached.

Following plaintiff's theory, the defendant became liable to [2] him on the day she came into possession of the money. She was a trustee by reason of her own wrong—*ex maleficio.* She was a trustee *in invitum.* She did not obtain the money as the result of any fiduciary or confidential relation existing between plaintiff and herself. The term "fiduciary or confidential relation" is one founded "upon trust or confidence reposed by one person in the integrity and fidelity of another, and precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed." In such relation the party in whom the confidence is reposed, if he voluntarily accepts the confidence (sec. 7882, Rev. Codes 1921), may take no advantage of the other party without the latter's knowledge or consent. (*Bacon* v. *Soule,* 19 Cal. App. 428, 126 Pac. 384; 2 Words and Phrases, Second Series, p. 529; *Ewing* v. *Ewing,* 33 Okl. 414, 126 Pac. 811; *Stahl* v. *Stahl,* 214 Ill. 131, 105 Am. St. Rep. 101, 2 Ann. Cas. 774, 68 L. R. A. 617, 73 N. E. 319; 25 C. J. 1119.)

Here the defendant became the trustee of a constructive trust after her husband had by violence become a trustee and had repudiated the trust in the presence of the plaintiff himself. The fraud relied upon as against defendant consisted in her taking the money and converting it to her own use with knowledge of the facts. The plaintiff knew of the fraud perpetrated by John H. O'Meara, but he did not know of defendant's fraud, not "positively," until July 24, 1916. Why he did not take action against John H. O'Meara does not appear. Why the existence of the fraud perpetrated by defendant could not have been readily ascertained plaintiff did not attempt to explain. Possibly, even probably, if he had sought for the facts he might have discovered them readily. There is nothing to

show that they were concealed by anybody. While under the circumstances shown mere silence on part of defendant was not concealment it does not even appear that she maintained [3] silence. Unless there is some relation of trust or confidence between the parties which imposes upon a defendant the duty of making a full disclosure of the facts, there must be some active affirmative concealment of the fraud, something said or done to continue the deception or to prevent inquiry and lull plaintiff into a sense of security, in order to postpone the running of the statute. (25 Cyc. 1188.) Trustee *ex maleficio* as she was, under the circumstances shown the law did not impose upon her any duty to speak.

Assuming the plaintiff's pleading to be sufficient to admit the proof which would bring him within the exception provided by the statute for one who has been defrauded but who has not discovered the facts, how fares the plaintiff?

As a general rule, the statute of limitations begins to run [4] from the time the right of action accrues (*Yore* v. *Murphy,* 18 Mont. 342, 45 Pac. 217), and not when the plaintiff who was ignorant before comes to a knowledge of his rights (*Thomas* v. *White,* 3 Litt. (Ky.) 177, 14 Am. Dec. 56; *Smith* v. *Bishop,* 9 Vt. 110, 31 Am. Dec. 607; *Hecht* v. *Slaney,* 72 Cal. 363, 14 Pac. 88).

We took the statute in question from California. In *Sublette* v. *Tinney,* 9 Cal. 423, Mr. Justice Field said: "The cause of action cannot be deemed to accrue upon the discovery of the fraud, in any other sense than that the statute will not be deemed to commence running until such period. Fraud is the substantive cause of action; upon its commission the right of action arises, not upon its discovery." And as that great jurist said. the policy of the law is that actions upon the ground of fraud shall be commenced within two years, but that an innocent party may not suffer whilst in ignorance of his rights, the statute exempts him from the limitation until a discovery of the fraud. This clause of the statute is an exception to the general provision, and, whether it must be pleaded or not, it must be proved.

Now the word "discovery" as used implies that the facts have been concealed from the party relying upon the exception. "Discovery" and "knowledge" are not convertible terms, and whether there has been a discovery of the facts constituting the fraud within the meaning of the statute is a question of law to be determined from the facts proved. It is not enough for the plaintiff merely to say that he was ignorant of the facts at the time of their occurrence, and has not come into knowledge of them until within two years. "He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have knowledge of them, it being the rule that if he has 'notice or information of circumstances which would put him on inquiry which if followed would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of the facts.' " (*Davis* v. *Hibernia S. & L. Society,* 21 Cal. App. 444, 132 Pac. 462; *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482, 45 Pac. 809; *Truett* v. *Onderdonk,* 120 Cal. 581, 53 Pac. 26.)

The plaintiff must show when the fraud or concealment was [5] discovered, and the circumstances of the discovery must be shown, so the court may see whether by ordinary diligence it might not have been made before. (*Wood* v. *Carpenter,* 11 Otto, 135, 25 L. Ed. 807 [see, also, Rose's U. S. Notes]; *Stone* v. *Brown,* 116 Ind. 78, 18 N. E. 392; *Lady Washington C. Co.* v. *Wood, supra; People ex rel. Post* v. *San Joaquin & A. Assn.,* 151 Cal. 797, 91 Pac. 740.)

"The fact that a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not, as a general rule, prevent the running of the statute, or postpone the commencement of the period of limitation, until he discovers the facts or learns of his right thereunder. Nor does the mere silence of the person liable to the action prevent the running of the statute. To have such effect, there must be something done to prevent discovery—something which can be said to amount to concealment." (17 R. C. L. 831; 25 Cyc. 1218; *Haynie* v. *Hall's Executor,* 5 Humph.

(Tenn.) 290, 42 Am. Dec. 427; *Wood* v. *Williams,* 142 Ill. 269, 34 Am. St. Rep. 79, 31 N. E. 681; *Bates* v. *Preble,* 151 U. S. 149, 38 L. Ed. 106, 14 Sup. Ct. Rep. 277 [see, also, Rose's U. S. Notes]; *Kennedy* v. *Baker,* 59 Tex. 150; *Brunson* v. *Ballou,* 70 Iowa, 34, 29 N. W. 794.) And such was the rule even before statutes were passed basing an exception directly upon concealment of the cause of action. (*Smith* v. *Blachley,* 198 Pa. 173, 53 L. R. A. 849, 47 Atl. 985.)

There must be some affirmative act or representation, or what is equivalent thereto, designed to prevent, and which does prevent, discovery. (Wood on Limitations, sec. 276f (2); *Lancaster* v. *Springer,* 239 Ill. 472, 88 N. E. 272; *Miller* v. *Powers,* 119 Ind. 79, 4 L. R. A. 483, 21 N. E. 455; *Waugh* v. *Guthrie G. L. F. & I. Co.,* 37 Okl. 239, 131 Pac. 174.)

In *Van Ingin* v. *Duffin,* 158 Ala. 318, 132 Am. St. Rep. 29, 48 South. 507, the court said: "Our decisions are that 'ignorance of right, there being no more than mere passiveness, mere silence, on the part of his adversary, cannot be engrafted as an exception on the statute of limitations, without a destruction of its wise policy, and without an encouragement of mere negligence.' "

Why, after John H. O'Meara forcibly took the money to which plaintiff was entitled, plaintiff passively sat by doing nothing for five years is unexplained. Why he did not discover, or attempt to discover, what became of the money, he did not say. He did not testify as to why he remained in ignorance of the facts upon which he attempted to base a cause of action for nearly five years. All he said was that prior to July 24, 1916, he did not know them. He did not attempt to go any further than this in his testimony. The question as to whether he did have knowledge of facts putting him on inquiry is suggested by his assertion that July 24, 1916, was the first time he "positively knew she had received a portion of these funds."

In any view of the case upon the record presented the plaintiff is barred.

"Statutes of limitation are vital to the welfare of society and [6] are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together." (*Wood* v. *Carpenter, supra.*)

The judgment is reversed and the cause is remanded to the district court of Silver Bow county, with directions to dismiss the action.

*Reversed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.

Rehearing denied July 12, 1924.