CHARLES E. MARSHALL, Administrator of the Estate of HENRY VERNE FIELD, Deceased, Plaintiff-Respondent, v. WILLIAM L. MINLSCHMIDT, Defendant-Appellant.

No. 10925.

Submitted September 12, 1966. Decided October 27, 1966.

419 P.2d 486.

Robert L. Johnson (argued) Lewistown, Raymond E. Dockery, Jr., Lewistown, for appellant.

Charles Marshall (argued) Lewistown, Peter Rapkoch, Lewistown, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an action brought by the administrator against the defendants-appellants to recover the assets of the deceased which had been transferred by the decedent to the defendants during his last illness and prior to his death.

Plaintiff-respondent claims the defendants employed fraud and undue influence to cause the decedent to transfer the property in question to the defendants. The property consisted of the deceased's bank account in the First National Bank of Lewistown, Montana, and an interest in cattle which the deceased and the defendants owned together.

The lower court found that an involuntary trust was created at the time of the transfer, and that while the funds transferred from the decedent's bank account and personal funds of the defendants were used to pay the expenses incurred by

the last illness of the deceased and the funeral expenses, the plaintiff was entitled to the corpus of the trust arising from the residue together with interest. In effect, the lower court's judgment gave the respondent one-half the value of the cattle herd in which respondent's decedent had an interest. The defendants have appealed from the judgment.

On July 26, 1958, Henry Vern Field died intestate. He was survived by one heir-at-law, his adult son, W. Dale Field of Shawnee, Kansas. The respondent, an attorney at law, was appointed administrator of the estate.

The deceased was in the ranching business. In later years he was engaged in a cattle partnership along with his sister and her husband, the appellants in this case. Plaintiff-respondent's Exhibit 2, which is a certified copy of Marks and Brands from the Montana Livestock Commission, records the ownership of the partnership brand as follows:

"December 7, 1954 Wm. L. or Etta M. Minlschmidt or Vern Field, Lewistown, Fergus

"Cattle—right rib * * *." Prior to this transfer of the brand, the brand was in the names of "Wm. L. Minlschmidt and Etta M. Minlschmidt." There was no consideration given between the parties for the transfer of December 7, 1954.

The deceased and appellants were quite close. Testimony indicates that the appellants handled all matters relating to the partnership and took care of deceased's personal affairs.

On June 27, 1958, deceased was taken to the hospital. During approximately the first ten days of deceased's confinement in the hospital his son and daughter-in-law came from Kansas and visited with him on several occasions. On one such visit deceased informed his son that he (deceased) owned one-half of the cattle on the ranch. The deceased requested that his son, daughter-in-law, and the appellants return to the hospital on a certain evening to discuss the division of the cattle, or the proceeds therefrom. The son and daughter-in-law returned to the hospital at the appointed time and waited until midnight. Ap-

pellants did not arrive at the hospital until after midnight Testimony indicates that the necessary papers were signed but not in the presence of the son and daughter-in-law.

Deceased executed a check to one of the appellants, William L. Minlschmidt, for the full amount of his checking account in the local bank to wit, $2,528.24, and at the same time he executed an assignment of his interest in the brand on the partnership cattle. Plaintiff's Exhibit 2 indicates the transfer as follows: "July 10, 1958 Wm. L. or Etta M. Minlschmidt * * *." The trial court found no consideration was given for these two transfers.

The purpose of the transfers was to enable the appellant, William L. Minlschmidt, to promptly pay all bills and expenses incurred at the hospital and those surrounding his illness. Then, in the event of his death, appellant was to pay over an amount, which is in question here, to the deceased's son. Appellant expended the entire amount of the checking account for the expenses of the deceased's last illness and also spent $97.00 out of his own funds.

After the death of Henry Field, appellants and deceased's son agreed that the cattle would be kept on pasture until the following fall, when they would be sold and the sale price, less expenses, would be divided. The cattle were sold, and $14,000 was considered as the full sale price.

On December 1, 1958, the appellant, William L. Minlschmidt, executed and delivered a check to the deceased's son in the amount of $2,000. Noted on the face of the check was "payment for cattle in full." This notation was crossed out by the son, and the check was cashed.

The appellants list three specifications of error:

(1). Was there clear, satisfactory and convincing proof to support the existence of an involuntary trust?

(2) Was there sufficient evidence for the lower court to conclude that plaintiff-respondent, as administrator, was the

owner of one-half of the cattle herd, rather than the one-third interest indicated by the recorded brand?

(3) Was this action barred by the statute of limitations?

We conclude that there is sufficient evidence to uphold the lower court's decision that the appellants are involuntary trustees of the property conveyed to them by the deceased. We stated in Lewis v. Bowman, 113 Mont. 68, 78, 121 P.2d 162, 167, that: "In an equity case the findings of the trial court will not be disturbed on appeal unless the evidence clearly preponderates against them, and when the evidence, fully considered, furnishes a substantial basis for the findings they will be allowed to stand. [Citing cases.] Moreover, this court cannot lose sight of the fact that the trial judge had the decided advantage of seeing the witnesses and hearing their testimony and observing their conduct and demeanor upon the stand." See also Barrett v. Zenisek, 132 Mont. 229, 315 P.2d 1001.

In finding an involuntary trust the lower court relied heavily on the case of Huffine v. Lincoln, 52 Mont. 585, 593, 160 P. 820, 822. We said in that case: "In such cases, as well as in those where the disposition is not testamentary, but *is the fruit of confidence,* the overwhelming weight of authority is that the promisor takes his advantage subject to the performance of his promise, and that *subsequent repudiation is a fraud* which operates to warrant the declaration of a trust without regard to the promisor's intention when the promise was made, or the presumption will be indulged, if necessary, that the promise was made without intention to fulfill it, and was therefore fraudulent." (Emphasis ours.)

The relevant involuntary trust provisions, section 86-210, R.C.M.1947, provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

There is no doubt that the relationship between the deceased and the appellants was a very close, confidential one. They had a warm friendship which involved, among other things, the appellants' deep concern for the deceased's health. Further, practically all of the financial aspects of their partnership as well as those personal in nature to the deceased were handled by the appellants. They would buy bulls, feed for cattle, deceased's clothing, food, and prescribed medicine. Then the deceased from time to time would reimburse them for the money spent. As far as the partnership is concerned, however, there is no evidence to show that the deceased paid a definite share of the costs.

The record shows that the deceased had talked with his son and daughter-in-law. Both the son and daughter-in-law testified that the deceased said he had a one-half interest in the cattle and that upon his death, the one-half interest was to go to his son, Dale Field.

The evidence is strong that the appellants received deceased's property coupled with the obligations to pay all expenses of the deceased and then transfer some money to the son. Appellants did pay all deceased's expenses surrounding his last illness. Then, appellant, William L. Minlschmidt sent a check dated December 1, 1958, in the amount of $2,000 to Dale Field. The notation on the check "Payment for cattle in full" clearly shows that the appellants did owe Dale Field some money from deceased's share in the cattle.

The $2,000 would not satisfy either the one-half interest in the cattle as claimed by the administrator or the one-third interest indicated by the brand record. We will not disturb the lower court's finding which declared that an involuntary trust was created.

Regarding the second specification of error, we must determine whether there is sufficient evidence to merit a finding that respondent as administrator should be entitled to the benefits of a one-half or a one-third interest in the cattle.

Again, an examination of the evidence is worthwhile. There is testimony of the son and daughter-in-law that the deceased told them of his one-half interest in the cattle. They testified further that the deceased told them that upon his death the one-half interest was to go to the son.

The only written evidence on record is plaintiff-respondent's Exhibit 2, a certified copy of marks and brands from the Montana Livestock Commission. The ownership of the brand as of December 7, 1954, was in the name of "Wm. L. or Etta M. Minlschmidt or Vern Field * * *." Then, on July 10, 1958, during the deceased's last illness, the brand was transferred to the names of "Wm. L. or Etta M. Minlschmidt * * *."

Testimony of appellant William Minlschmidt shows the intent behind the use of the word "or" in the recorded transactions;

"Q. Why did you use the word 'or'? A. Well, for that simple reason that I figure I have used that all my life, and 'or' if anything happens to one or the other it goes to the other party.

"Q. And that was the consideration at that time for filing the brand in that way? A. That's right."

The recorded brand signifies a joint interest in the brand, the several persons having equal shares. Section 67-308, R.C.M.1947. In State Board of Equalization v. Cole, 122 Mont. 9, 195 P.2d 989, we stated:

"Under the common law the joint tenants were seized 'per my et per tout,' by the half and by the whole. That is, each has the entire possession of the estate. If there be two of them they have an individual moiety of the whole. But for the purposes of alienation each tenant was seized of his proportionate part. 4 Kent's Commentaries, 13th Ed., 386. Each joint tenant has the whole for the purposes of tenure and survivorship but as between the cotenants the rights are equal. 'But the tenant's interest is nevertheless a separate and distinct property right which he holds as an individual against his co-tenants and all

the world.' 2 Walsh, Commentaries, Law of Real Property, sec. 116, p. 10. See Thornburg v. Wiggins, 135 Ind. 178, 34 N.E. 999, 22 L.R.A. 42, 41 Am.St.Rep. 422.

"Under the statute the interest of each of the co-tenants was equal."

The statute on the right of the owner of a recorded brand, section 46-606, R.C.M.1947, states: "The person, firm, or corporation in whose name any mark or brand is of record, as in this act provided, is entitled to the right to the exclusive use of such mark or brand on the species of animal and in the position designated in such record, and a *copy of such record certified by the general recorder of marks and brands shall * * * be prima facie evidence that the person * * * entitled to use such mark or brand is the owner of all animals on which the same appears* in the position and on the species of animal stated in such certificate." (Emphasis ours.) See also Klind v. Valley County Bank of Hinsdale, 69 Mont. 386, 391, 222 P. 439.

A corollary to this statutory rule, that *prima facie,* one is the owner of cattle bearing his recorded brand is that *prima facie* the owners of the recorded brand have the same interest in the cattle bearing their brand as is indicated by the brand record.

This *prima facie* one-third joint ownership of the cattle must be contradicted and overcome by other evidence. Section 93-301-11, R.C.M.1947. The question now is whether the oral testimony, between the deceased and two interested persons, to wit, the son Dale Field and his wife Pauline, is sufficient to contradict and overcome the *prima facie* one-third interest as is evidenced by the brand record.

The common situation where the *prima facie* ownership question arises is where an outsider challenges the owner of the recorded brand for the cattle. The case of Klind v. Valley County Bank of Hinsdale, 69 Mont. 386, 222 P. 439, involved a conversion action. The defendant bank claimed that the cattle in question were security on an indebtedness of the plaintiff's

deceased brother. The only proof offered by the defendant to overcome plaintiff's *prima facie* ownership was testimony from a cashier of the defendant bank. He testified to a conversation he had had with the mortgagor (plaintiff's deceased brother) alleged to have taken place in the presence of plaintiff and certain other relatives. The gravamen of the conversation was that the plaintiff's brother and not the plaintiff was the owner of the cattle. The court concluded that "this proof was not sufficient to even overcome the presumption of plaintiff's ownership of the cattle bearing his brand * * *."

Here, the testimony of two interested parties, Dale Field and his wife, along with other testimony and facts, was, in the opinion of the trial judge, sufficient to overcome the *prima facie* one-third ownership evidenced by the brand record.

It was undenied that appellants as the living members of the partnership had the partnership accounts, the tax statements and other business information that could have been produced to prove their contentions. Too, the very giving by them to the Fields of the $2,000 check showed some agreement or understanding as to what was to be done when the cattle were sold. The court could not but see, as we do, that $2,000 even after some deductions for operations and costs did not make up either a one-third or one-half interest.

The record reveals that the testimony of the Fields as to what had happened and what had been said throughout the trial was consistent while that of the appellants was both inconsistent and contradictory.

Appellants had in their possession all of the partnership records which we would assume to be income tax records, division of profits and payment of bills since the inception of the arrangement between the parties in 1954, and failed to produce any of them at the trial of this cause in the lower court.

Section 93-2001-1, subd. 6, provides "That evidence is to be estimated not only by its own intrinsic weight, but also accord-

ing to the evidence which it is in the power of one side to produce, and of the other to contradict; and therefore

"(7) That if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

In view of the above section, this court must distrust any evidence offered by the appellant concerning the ownership of the cattle.

Considering all of this testimony we cannot say the trial judge erred in his findings in this matter.

The third specification of error is concerned with whether or not this action was barred by the statute of limitations. The statute involved in this case demands that the action be brought within two years from the date of discovery by the aggrieved party. Section 93-2607, subd. (4), R.C.M.1947, reads: "An action for relief on the grounds of fraud or mistake, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

From the testimony, the transfer of the deceased's property was made on July 1, 1958. The decedent died July 26, 1958. The administrator of the estate brought this action July 25, 1960. The question now is when does the statute of limitations begin to run? In Ray v. Divers, 81 Mont. 552, 264 P. 673, 675, this court said: "The plaintiff must show when the fraud or concealment was discovered, and the circumstances of the discovery must be shown, so the court may see whether by ordinary diligence it might not have been made before."

Respondent contends that the earliest possible date he could have discovered the fraud was December 1, 1958. This was the date appellants delivered the check for $2,000 to deceased's son. This date, December 1, 1958, we believe is the date the statute of limitations began to run.

Dale Field was not familiar with the cattle business. He relied entirely upon the appellants as far as liquidating the cattle was concerned. It was agreed that the cattle would be kept until fall when a better sale price could be realized. There was no evidence or reason to suspect any fraud. Only when Dale Field received the check for $2,000 on December 1, 1958, with the notation "'Payment for cattle in full" was the fraud discovered.

In Kerrigan v. O'Meara, 71 Mont. 1, 7, 227 P. 819, we stated: "Unless there is some relation of trust or confidence between the parties which imposes upon a defendant the duty of making a full disclosure of the facts, there must be some active affirmative concealment of the fraud, something said or done to continue the deception or to prevent inquiry and lull plaintiff into a sense of security, in order to postpone the running of the statute."

This court in Kerrigan v. O'Meara, 71 Mont. 1, 8, 227 P. 819, quoting from Sublette v. Tinney, 9 Cal. 423, concerning the statute of limitations said: " 'The cause of action cannot be deemed to accrue upon the discovery of the fraud, in any other sense than that the statute will not be deemed to commence running until such period. Fraud is the substantive cause of action; upon its commission the right of action arises, not upon its discovery.' And * * * the policy of the law is that actions upon the ground of fraud shall be commenced within two years, but, that an innocent party may not suffer whilst in ignorance of his rights, the statute exempts him from the limitation until a discovery of the fraud. This clause of the statute is an exception to the general provision, and, whether it must be pleaded or not, it must be proved.

"Now the word 'discovery' as used implies that the facts have been concealed from the party relying upon the exception. 'Discovery' and 'knowledge' are not convertible terms, and whether there has been a discovery of the facts constituting the fraud within the meaning of the statute is a question of law

to be determined from the facts proved. It is not enough for the plaintiff merely to say that he was ignorant of the facts at the time of their occurrence, and he has not come into knowledge of them until within two years. 'He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have knowledge of them, it being the rule that if he has "notice or information of circumstances which would put him on inquiry which if followed would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of the facts." ' "

Here, the son was lulled into a false sense of security with the promise of appellants (his aunt and uncle) to sell the cattle in the fall and divide the money. This action was not barred by the statute of limitations.

Finding no reversible error, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES ADAIR and CASTLES, and DISTRICT JUDGE THOMAS DIGNAN, sitting in place of MR. JUSTICE DOYLE, concur.