No. 12238

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

JOHN F. PATTERSON, JR., SPECIAL
ADMINISTRATOR OF THE ESTATE OF
CLARA M. MODLIN, Deceased,

Plaintiff and Respondent,

-vs-

ANNA K. HALTERMAN and THE FIRST
NATIONAL BANK OF MISSOULA, MONTANA,

Defendants and Appellants.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellants:

Worden, Thane, Haines and Williams, Missoula, Montana.
Shelton C. Williams argued, Missoula, Montana.

For Respondent:

Mulroney, Delaney and Dalby, Missoula, Montana.
Dexter Delaney argued, Missoula, Montana.
Boone, Karlberg and Haddon, Missoula, Montana.

---

Submitted: November 30, 1972

Decided: JAN 2 4 1973

Filed: JAN 2 4 1973

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This action was commenced in the district court of Missoula County by John F. Patterson, Jr., a practicing attorney, acting in his own behalf in his capacity as special administrator of the estate of Clara M. Modlin, deceased. The suit joined Anna K. Halterman and the First National Bank of Missoula as parties defendant. However, the status of the bank was that of a stakeholder with no interest in the outcome and it did not participate in the trial. The trial court, sitting without a jury, entered findings of fact, conclusions of law and judgment for the plaintiff, which held that defendant Anna K. Halterman had no claim in a particular savings account and a certificate of deposit and directed defendant First National Bank of Missoula to pay over the savings account and certificate of deposit to the estate. From the judgment, the court's denial of her motion to amend the findings of fact and conclusions of law, and her motion for a new trial, Mrs. Halterman appeals.

Undisputed facts appearing in the record are that Clara Modlin died on October 26, 1968, at the age of 88 years. On March 22, 1968, about seven months prior to her death, Mrs. Halterman was named as joint tenant with Clara Modlin in a savings account with a balance at that time of approximately $1,065.89 and in a certificate of deposit with a balance at that time of approximately $5,523.62, both of which were and are held by the First National Bank of Missoula.

About three years prior to her death, Clara Modlin executed a will which was admitted to probate and under which John F. Patterson, Jr, was appointed special administrator. Mrs. Halterman, a niece of Clara Modlin, was not a beneficiary under the will. The will divided the entire estate between Mr. Glen Boyer, husband of a predeceased daughter, and two granddaughters, children of Glen Boyer.

Plaintiff testified he had assisted Clara Modlin in two transactions concerning her property. On August 18, 1967, he drew a

- 2 -

deed which created a joint tenancy of Clara Modlin and Glen Boyer in her home, worth about $14,000. On April 7, 1968, he helped her complete a change of beneficiary form which designated Glen Boyer beneficiary of two life insurance policies owned by Clara Modlin, amounting to about $500.

During the two year period preceding her death, Clara Modlin was in a state of declining health. She resided at her home as long as she was able then entered St. Patrick's Hospital in Missoula. She later spent ten months to a year in the Hillside Manor Nursing Home in Missoula, and was finally again admitted to St. Patrick's Hospital, where she died.

Mrs. Halterman testified that the joint tenancy transaction of March 22, 1968 between she and Clara Modlin was not made pursuant to any preexisting debt or any express or implied contract for services rendered or goods delivered.

The disputed facts, which are the crux of the lawsuit and appeal, concern (1) whether on March 22, 1968, Clara Modlin had the mental capacity to comprehend the nature of the transaction entering Mrs. Halterman's name on the two bank accounts as joint tenant; (2) whether Clara Modlin was capable of and formed an intention to make a gift to Mrs. Halterman, and (3) whether Mrs. Halterman had exerted undue influence on Clara Modlin.

Two assignments of error involve questions of law: (a) whether the plaintiff's original complaint stated a claim entitling him to relief; and (b) whether the trial judge erred in excluding certain evidence offered by defendant. The remaining assignments of error relate to the three issues of fact.

Considering first the law issues, we find that the cases cited by defendant in support of her motion to dismiss the original complaint predate the adoption of the rules of civil procedure in effect at the time the complaint was filed. The original complaint was no model of draftsmanship, but it does not invoke any serious due process question of lack of notice to defendants. The complaint was amended to conform to the proof at trial.

The excluded evidence which defendant assigns as error concerns statements made by Clara Modlin to Mrs. Halterman and a Mrs. Stevenson, as to Clara Modlin's attitude toward her granddaughters and her intention regarding the disposition of her property. We find the trial judge acted within his discretion in excluding the offered testimony on various grounds. The proposed testimony of both witnesses falls squarely under the hearsay rule stated in section 93-401-2, R.C.M. 1947. The proposed testimony of Mrs. Halterman falls squarely under the dead man statute section 93-701-3, R.C.M./1947. The proposed testimony had questionable probative value, in light of the preceding evidence concerning Clara Modlin's senility at the time the statements were made.

Considering now the fact issues, we find the transaction which placed Mrs. Halterman's name on the two bank deposits to be valid and binding must meet the legal requirements of a gift inter vivos. Section 67-1706, R.C.M. 1947, states:

"A gift is a transfer of personal property made voluntarily, and without consideration."

In In re Brown's Estate, 122 Mont. 451, 455, 206 P.2d 816, this Court stated:

"To constitute a gift of a chattel there must be (1) an intention on the part of the donor to make the gift; (2) delivery by the donor of the subject matter of the gift, and (3) acceptance of the gift by the donee."

See also: State Board of Equalization v. Cole, 122 Mont. 9, 195 P.2d 989; Fender v. Foust, 82 Mont. 73, 265 P. 15.

It is requirement (1) from Brown which is determinative here. If by reason of old age inducing senility, illness inducing incompetence, undue influence, or a combination of these factors, Clara Modlin did not have a rational, independent intention to make a gift, i.e. the requisite donative intent, there was no gift.

38 C.J.S. Gifts §§ 13, 34, explain the requirement in more detail:

§ 13 in pertinent part states: "It is essential to the validity of a gift that the donor shall have sufficient mental capacity to make a gift; a gift by a donor mentally incompetent is void."

§ 34 in pertinent part states: "Freedom of will on the part of the donor is essential to the validity of a gift, and where the donor has been induced to make a gift through fraud, duress or undue influence the gift may be set aside. In determining whether fraud or undue influence invalidating a gift exists, the courts will look to the special facts of each case. The court must consider the situation of the parties, the conditions that surround them, the attitude that they occupy toward each other, and the influences that control their actions. Thus, in determining whether undue influence entered into a transfer by gift, consideration will be given to the nature of the relationship between the donor and donee, the donor's susceptibility to undue influence, and the reasonableness of the transfer in light of the existing circumstances." (Emphasis added).

At trial, plaintiff introduced four witnesses to testify concerning Clara Modlin's state of health and mental capability during the general time span in which the joint tenancy transaction was carried out. The witnesses were: the plaintiff John F. Patterson, Jr., Clara Modlin's attorney for many years; Dr. Gerald A. Diettert, M.D., Clara Modlin's physician for the five years preceding her death; Geraldine A. O'Connor, a registered nurse at the Hillside Manor Nursing Home; and J. Lynn Kellogg, a recently retired director of the First National Bank of Missoula, who for many years was acquainted with Clara Modlin in his professional capacity.

Defendant introduced six witnesses for the same purpose: Sarah Stephenson, Kate J. Rasmussen, Wes Waldbillig, Ruth Bloom, and Theodora T. Reed, all long time personal friends of Clara Modlin; and Mrs. Halterman, the defendant. A seventh witness, Wallace E. Small of the First National Bank of Missoula, testified basically about bank policy and his observations of the joint tenancy transactions.

The testimony of plaintiff's and defendant's witnesses concerning Clara Modlin's physical and mental condition, her susceptibility to influence, and the question of whether she had been influenced, was in conflict. This, as we have stated, is the determinative issue of the case.

The burden of proof for undue influence and the basic elements for the court's consideration in determining the fact of undue influence were stated by this Court in In re Estate of Mack G. Hall, _____Mont._____, 492 P.2d 1388, 1394, 29 St.Rep. 53,62, quoting from Estate of Maricich, 145 Mont. 146, 161, 400 P.2d 873:

> "'The law in the cases concerning undue influence places upon the contestant the burden of proof in showing substantial evidence of undue influence. In determining this issue on undue influence we may consider:
>
> "'(1)  Confidential relationship of the person attempting to influence the testator [donor];
>
> "'(2)  The physical condition of the testator [donor] as it affects his ability to withstand the influence;
>
> "'(3)  The mental condition of the testator [donor] as it affects his ability to withstand influence;
>
> "'(4)  The unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence; and
>
> "'(5)  The demands and importunities as they may affect the particular testator [donor] taking into consideration the time, the place, and all the surrounding circumstances.'"

Although in Hall this expression of legal principles is directed toward an alleged undue influence on a testator in making a will, the same basic criteria apply to an alleged undue influence on a donor in making a gift, and they are particularly pertinent in the instant case, since the nature of the alleged gift was essentially testamentary in partially defeating the effect of the donor's will.

Reviewing, then, the evidence as it relates to the various criteria enumerated in Hall, the record discloses that Mrs. Halterman was a close friend and blood relative of Clara Modlin. In the opinion of her physician, Clara Modlin suffered from cerebral arteriosclerosis and was disoriented and forgetful. In the opinion of her nurse, she was more susceptible to suggestion than the average healthy person. The unnatural effect of this joint tenancy transaction was to partially defeat the provisions of her will toward closer relatives. Mrs. Halterman in a letter which was introduced at trial, and testified to at trial, suggested to Clara Modlin that "she put someone else's name on her savings account".

It is readily apparent that on some material points the testimony of plaintiff's and defendant's witnesses was contradictory. It also appears there was an inherent contradiction in the plaintiff's own testimony regarding Clara Modlin's competency on the dates of the two joint tenancy transactions in which he participated. However, we find there was ample evidence, if believed, that would fully support the court's findings of fact.

In Stromberg v. Seaton Ranch Company, ____Mont.____, 502 P.2d 41,48, 29 St.Rep. 848, this Court stated the pertinent rule of appeal and error which must be applied to the factual issues raised on appeal:

> "As is indicated in the summary of the facts, there was an unusual amount of evidence presented to the trial judge which resulted in numerous conflicts in the evidence. He was the one who had the only opportunity to see and hear all witnesses. Each party makes a strong argument that these facts and circumstances favor his position. Yet, as has been stated by this Court too many times to require citation, it is not this Court's province to review the record of the trial court to determine whether or not we agree with the conclusions reached, if supported by the evidence. We must indulge the presumption that the judgment of the district court is correct and will not be disturbed unless there is a clear preponderance of evidence against it when viewed in the light most favorable to the prevailing party * * *." (Emphasis added).

Accordingly, in light of the facts and in the absence of a showing of a clear preponderance of evidence against the trial court's findings of fact and conclusions of law, the judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 7 -