No. 84-417

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

UNIVERSITY OF MONTANA,

        Plaintiff and Respondent,

  -vs-

MARK COE, TAMERLY D. COE and
JORDON COE,

        Defendants and Appellants.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          Terry Wallace argued, Missoula, Montana

       For Respondent:

          Morales & Volinkaty; Julio K. Morales argued, Missoula,
Montana

                       Submitted:  May 2, 1985

                       Decided:  August 5, 1985

Filed: AUG  1985

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the judgment of the District Court of the Fourth Judicial District of the State of Montana, County of Missoula, the Honorable John S. Henson presiding. This case involves an execution on a bank account to recover student loans under the National Direct Student Loan Program.

The appellant, Mark D. Coe, a former Montana University student, took out a series of student loans under the National Direct Student Loan Program, amounting to $6,437.30. For these loans he was required to sign, through the University, a promissory note pursuant to the National Direct Student Loan Program of the United States. He defaulted on the loans and when later requested, made only one payment of $20. The University, respondent herein, brought suit and obtained a partial summary judgment in the sum of $6,437.30.

Through one of several executions, the University levied against the joint savings account of Mark Coe at the First Bank-Western Montana, Missoula. The savings account was in the name of "Tammerly or Mark D. Coe" which at the time of execution had a balance of $3,179.23. Tammerly Coe requested the Bank not to release the funds, claiming that the funds did not belong to Mark Coe, but rather belonged to her and to Jordan Coe, brother to Tammerly and Mark. Pursuant to agreement of counsel, and a stipulation filed, plus to avoid the cost of an interpleader by the bank, the funds were deposited with the District Court. A second stipulation was filed to allow intervention by Tammerly Coe and Jordon Coe.

2

Tammerly Coe and her brother, Jordan contend that they deposited the money in the bank and that their brother, Mark, deposited no funds whatsoever. However, one of the exhibits presented to the District Court was a copy of the signature card of the account which listed the names of Tammerly Coe or Mark D. Coe, along with their addresses, which stated that Mark was "the owner of a joint savings account with his sister." Jordan Coe did not sign this account, nor does his name appear on the signature card though he claims he owns $2,000 of the funds in the account. Jordan alleges he gave that amount to Tammerly for safe keeping on his behalf. Tammerly claims the remainder of the funds, less the $2,000 deposited by her brother Jordan, belong to her and that Mark Coe, as previously noted, never made a deposit.

One basic issue and three sub-issues are presented for our consideration. Listed as the basic issue is:

(1) Whether the court erred in declaring all the funds in a joint checking account are subject to execution on a judgment against one joint tenant.

Listed as the three sub-issues are the following:

(2) What portion of a joint checking account, if any, is subject to execution on a judgment against one who has signed a signature card?

(3) Was intent of the co-tenants of a joint checking account a factor in determining a creditor's right to execute a judgment against one co-tenant?

(4) What, if any, interests of co-tenants in a joint checking account are subject to protection?

As noted in the respondent's brief this case is one of first impression addressing the question of whether a joint bank account is subject to execution on a judgment against

3

only one joint depositor, and if so, to what extent. The District Court after having examined statutory case law in Montana and elsewhere, as well as the equitable arguments raised, concluded that under the present fact the entire account was subject to execution.

The appellants argue that the District Court erred for two reasons. The first reason was that the sole issue that the court was to decide, as set forth in the stipulation, was who owned the money in the account. Based upon that determination, the court was to decide what amount was subject to execution. Appellants allege the affidavit was not supposed to address the issue of intent, as counsel had stipulated. They further allege that the only issue, the only burden that these depositors had, was to show who owned the money in the account. Tammerly and Jordan submitted an affidavit that set forth whose money was in the account, which the University failed to refute.

The second reason was that appellants were never given an opportunity to argue the issue of intent. The court looked to the argument outside the stipulation of counsel, which appellants contend constituted error. They claim, under the circumstances of this case, the issue of the judgment creditor's rights to funds in the joint account never hinged on the issue of intent.

We find that the first two issues are the controlling issues in this case. These two issues can be properly restated whether this is a joint tenancy account with right of survivorship, or whether it is a tenancy in common. Both the appellants and the respondent rely on previous case law in Montana that addresses issues involving joint bank accounts regarding rights of inheritance and inheritance

4

taxes. Malek v. Patten (Mont. 1984), 678 P.2d 201, 41 St.Rep. 305; Anderson v. Baker (Mont. 1982), 641 P.2d 1035, 39 St.Rep. 273; In the Matter of Sinclair (Mont. 1982), 640 P.2d 918, 39 St.Rep. 331; Casagranda v. Donahue (1978), 178 Mont. 479, 585 P.2d 1286; Patterson v. Halterman (1973), 161 Mont. 278, 505 P.2d 905; State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989; In Re Sullivan's Estate (1941), 112 Mont. 519, 118 P.2d 383.

Appellants direct our attention to cases outside this jurisdiction, claiming this particular set of circumstances has not previously been answered by Montana case law. Purma v. Stark (Kan. 1978), 585 P.2d 991; Walnut Valley State Bank v. Stovall (Kan. 1978), 574 P.2d 1382; Yakima Adjustment Services v. Durand (Wash.App. 1981), 622 P.2d 408. Appellants argue these out of state jurisdictional cases state the majority rule. We find that the Montana rule set forth in our case law as to joint tenancy and tenancy in common, represents a more reliable manner of determining questions concerning the ownership of joint accounts. As Justice Sheehy very ably noted in this Court's opinion in Casagranda v. Donahue, supra, that rule was set forth and reiterated in Ludwig v. Montana Bank & Trust Co. (1939), 109 Mont. 477, 98 P.2d 377, wherein this Court quoted with approval from Hill v. Badeljy (Ca.App. 1930), 290 P. 637 at 640:

> "The question involved in cases of this character is the intention of the parties . . . and when such intention is evidenced by a written agreement, as was done in the case at bar, this question of intention ceases to be an issue, and the Courts are bound by the written agreement . . . Furthermore . . . parol evidence is not admissible to change the terms of the legal effect of such a written instrument where it is in no

respect uncertain or ambiguous." 98 P.2d at 389.

In our most recent case, Malek v. Patten, supra, this Court again reasserted that it "preferred" the Montana rule even though the donee/joint owner never signed the signature card. In Montana's cases involving third parties, one joint owner is truly an owner with an unquestionable right to withdraw the entire funds. It is only where one joint tenant seeks to take advantage of the other without third party rights being affected, that this Court has allowed evidence beyond the joint account signature card and its legal consequences.

In the instant case such third party rights are the primary consideration and therefore no extrinsic evidence was admissible. Mark Coe, Tammerly Coe and Jordan Coe all admit in their affidavit that Mark was an owner of the joint account.

The second issue considers whether the joint account is distinguished from a traditional common law fractional share, and a creditor of one depositor can execute on the whole account. The statutes that control in this matter cover the property and ownership thereof and ownership of joint bank accounts in Montana. That section, 70-1-101, MCA, provides as follows:

> "Property defined--ownership. The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this code, the thing of which there may be ownership is called property."

Section 32-1-442, MCA, concerning ownership of joint bank accounts in Montana, provides in pertinent part:

> "When a deposit has been made or shall hereafter be made in any bank transacting business in this state in the names of

> two or more persons, payable to either or payable to either or the survivor, or any survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to any of said persons whether the other or others be living or not . . . "

Section 70-1-306, MCA, provides:

> "Ownership by several persons--types. The ownership of property by several persons is either of:
>
> "(1) joint interests;
>
> "(2) partnership interests;
>
> "(3) interests in common."

As previously noted in consideration of the controlling issues in this case, numbers 1 and 2, the question is whether this is a joint account under our statutory and case law, or a tenancy in common with no survivor. This Court in Ivins v. Hardy (1947), 120 Mont. 35, 179 P.2d 745, held that a tenancy in common is created whenever the instrument bringing an estate of two or more persons into existence does not specifically state that the estate created is other than a "tenancy in common." The facts situation concerning the signing of the signature card in Casagranda v. Donahue, supra, and the facts situation in this case are different. The card signed in the joint account in Casagranda specifically said:

> "The undersigned hereby open an account in your bank as joint tenants and not as tenants in common, and, upon the death of either or any of us, all monies then in this account shall be paid to the survivor or survivors as his, her, or their individual property. All monies hereafter deposited in this account shall likewise be joint tenants and not tenants in common. You are hereby directed to honor checks or orders on this account signed by either or any of us, or survivors of either or any of us."

7

Under that facts situation in Casagranda, we held that the savings account became the individual property of respondent upon the decedent's death. Right of survivorship, which is an essential characteristic of any joint tenancy, cannot be defeated by the executrix of defendant's estate, and any attempt to satisfy the general devises in a will.

In the case at bar the signature card signed by Tammerly D. Coe or Mark D. Coe noted:

> "The signature of each person authorized to sign on this account appears on the reverse side of this card and signifies agreement that the account is subject to all applicable rules of this bank now existing or hereafter adopted. I acknowledge receipt of a copy of the Bank's Rules and Regulations Governing Bank Accounts."

The reverse side of the signature card had the following notated at the bottom:

> "The undersigned depositor, whose bank account is described on the reverse side, hereby appoints the person(s) whose specimen signature(s) appears above, agent(s) of the undersigned with respect to said bank account with the authority specified in the Bank's posted General Rules and Regulations Governing Bank Accounts."

We find that the major distinguishing characteristic of a joint tenancy as opposed to a tenancy in common is a right of the survivor of each of the co-tenants. We hold, under the facts of this case, that this is a tenancy in common and that the creditor, University of Montana, is entitled to one-half, not the total amount levied against the account currently being held by the Clerk of the Court of the Fourth Judicial District.

Having decided the first two issues which are controlling, it is unnecessary to consider the remaining issues presented by the respondent, that being whether appellants had failed to establish an intent not to make

8

Mark Coe an owner and whether equitable considerations favor the appellants.

The judgment of the District Court is modified and remanded with direction to comply with the provisions of this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
Justices

9

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent from what I find to be a bewildering rationale in the majority opinion.

In stating the facts, the majority notes:

> "Through one of several executions, the University levied against the joint savings account of Mark Coe at the First Bank-Western Montana, Missoula."

With little explanation, the majority concludes its opinion by finding that the account is not a joint account, but rather a tenancy in common. Apparently, the majority's conclusion rests upon the fact that the signature card did not contain a clear designation of ownership, nor was there a reference to survivorship; therefore, the Court deems the funds in the account to be held by the account designees as tenants in common rather than joint tenants.

This is a case of first impression in Montana. In Casagranda v. Donahue (1978), 178 Mont. 479, 585 P.2d 1286, relying on State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989, this Court held that where depositors sign a signature card containing an agreement that the deposit is payable to one of the co-depositors or the survivor, the question of donative intent is settled and the funds in the account are a joint tenancy. However, in both Casagranda and Cole, one of the people whose names appeared on the signature card had died. This Court made an exception to that rule in Anderson v. Baker (1981), 196 Mont. 494, 641 P.2d 1035. In Anderson, the donor/depositor attempted in her lifetime to divest the alleged joint tenant of any interest in the account. This Court held that the donor/depositor had exclusive ownership of the funds in the joint account and that the signature card was not conclusive under Montana law. The distinguishing feature from Casagranda and Cole was that

10

the donor/depositor was alive and donative intent was assertainable.

In the case at bar, there is no agreement for these funds to be owned in any certain manner. Therefore, the question of ownership must remain open.

The unrefuted facts in this case show that the funds in the account were owned by Tammerly Coe and Jordan Coe. Mark Coe, under facts which are not contested, had no ownership in the funds.

It should be noted that a bank account itself can be held in a different ownership than the funds deposited in the account. Two lawyers may have a joint account as partners and deposit a client's money in the account. Those monies do not automatically become the property of the named account owners. It is true that, as between the bank and the depositors, the bank is without liability when it releases funds to those named on the account. However, if the funds in the account belong to another, the account owners must hold the money in trust for the rightful owner.

In O'Hair v. O'Hair (Ariz. 1973), 508 P.2d 66, the Arizona court dealt with a similar question. Under the facts of that case, the court was involved in determining ownership of $150,000 deposited by husband in husband and wife's joint bank account. The court stated:

> "While as between the bank and the depositor the contract of deposit is conclusive, the mere form of the bank account is not regarded as sufficient to establish the intent of the depositor to give another a joint interest in or ownership of the deposit. Bolton v. Bolton, 306 Ill. 473, 138 N.E. 158 (1923); Ball v. Forbes, 314 Mass. 200, 49 N.E.2d 898 (1943); Hodgins v. Zabel, 7 Misc.2d 484, 166 N.Y.S.2d 135 (Sup.Ct. 1957); Industrial Trust Co. v. Taylor, 69 R.I. 62, 30 A.2d 853 (1943). As the court said in Cashman v. Mason, 72 F.Supp. 487, 492 (D.Minn. 1947):

11

"'Joint accounts are a common method of handling funds in a bank as between husband and wife and others for mutual convenience and economy, but without necessarily intending to bestow any present interest in the fund on the one who is joined for the convenience of the owner of the moneys deposited.'

"'[T]he intention of the depositor is controlling.' McNabb v. Fisher, supra, 38 Ariz. at 295, 299 P. at 681." 508 P.2d at 68.

Unfortunately, the precedent of this case is incredibly far-reaching and will effectuate absurd results. Despite actual evidence of ownership including the intent of depositors, funds in a bank account are joint tenancy funds if the account provides for survivorship and tenancy in common funds if the account is silent as to survivorship. Under the authority of this case, the ownership of all funds will be automatically transferred to reflect the ownership designated on the account itself.

Although the majority opinion is not clear as to what disposition occurred in the District Court, the fact is that the District Court allowed execution upon all of the funds in the joint bank account. I would reverse and remand with directions to dismiss.

_____
Justice

12

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion. While this dissent adds no authority, I trust it will help to raise questions not yet answered by the majority opinion and Justice Morrison's dissent. For clarity in the discussion, following is Exhibit 6, the signature card for this account:

In a number of the decisions of this Court discussing bank accounts, the account cards indicated an express intention to create a joint tenancy with right of survivorship. The foregoing only indicates an intent to establish a "Joint" account.

Section 32-1-442, MCA, in substance provides that when a deposit is made payable to either of two persons, such deposit may be paid to either of such persons, whether living or not. As a result, from the Bank's standpoint, this account is treated as a joint tenancy with right of survivorship.

In contrast, § 70-1-307, MCA, in substance provides that a joint tenancy is one owned by several persons in equal shares by a title created by a single transfer when expressly declared in the transfer to be a joint tenancy. The signature card does not contain a declaration of intent to create a joint tenancy. In a similar manner, § 70-1-314 in substance provides that every interest created in favor of several persons is an interest in common unless declared in its creation to be a joint interest as provided in § 70-1-307, MCA. These code sections suggest that the account in question should be classed as a tenancy in common.

However, in Marshall v. Minlschmidt (1966), 148 Mont. 263, 419 P.2d 486, this Court concluded that a brand with an "or" designation established a joint tenancy. Following is the form of ownership and conclusion of the Court:

> "The ownership of the brand as of December 7, 1954, was in the name of 'Wm. L. or Etta M. Minlschmidt or Vern Field . . .' Then, on July 10, 1958, during the deceased's last illness, the brand was transferred to the names of 'Wm. L. or Etta M. Minlschmidt . . .'
>
> ". . .
>
> "The recorded brand signifies a joint interest in the brand, the several persons having equal shares. Section 67-308, R.C.M. 1947. [Now § 70-1-307, MCA.]"

Marshall was subsequently followed by this Court in First Westside Nat'l Bank v. Llera, Tynes & Fisher (1978), 176 Mont. 481, 580 P.2d 100. There the Court concluded that following Marshall, in Montana an ownership document showing title in two or more persons "and/or" has the effect of creating a joint tenancy estate with right of survivorship. This applied to personal property, not real estate. The

14

Court then considered the nature of the interest of a joint tenant in joint tenancy property and referred to what is now § 70-1-307, MCA, to conclude that the effect of the statute is to include all of the incidents of a joint tenancy estate at common law. The Court then stated:

> "Thus, accepting the 'and/or' title as having created a joint tenancy in this case, the legal result is that Allen R. Llera owned an equal share in the automobile, and the right of survivorship with his mother."

The foregoing cases have not been overruled.

Based on the foregoing authority, I conclude that we must class the present bank account as a joint tenancy bank account, with each of the two account holders having all of the rights of joint tenants with right of survivorship.

Our next consideration is the effect of the levy of execution upon the interest of Mark D. Coe in the joint account. As pointed out, § 32-1-442, MCA, clearly gives to Mark D. Coe the right to withdraw all of the funds from time to time in the account, and obligates the Bank to pay any amounts drawn from the account by him. That code section was construed in Ludwig v. Montana Bank & Trust Co. (1939), 109 Mont. 477, 98 P.2d 379, where the Court was faced with the withdrawal of all of the funds from an account by one joint party without the consent of the other. The Court cited with approval Hill v. Badeljy, 117 Cal.App. 598, 290 P. 637, 640 stating:

> "'The question involved in cases of this character is the intention of the parties making the deposit, and where such intention is evidenced by a written agreement, as was done in the case at bar, this question of intention ceases to be an issue, and the courts are bound by the written agreement . . . Furthermore, in any action between the depositors or the bank during the lifetime of both depositors, in the absence of fraud or mistake, parol evidence is not admissible to change the terms of the legal effect of such a written instrument where it is in no respect uncertain or ambiguous.'"

There is no evidence in the record to indicate any contrary intent on the part of the parties.

15

I would conclude that the execution creditor can properly attach all of the funds in the bank account in the same manner that Mark Coe could have withdrawn all of the funds from the same account.

_____
Justice

The undersigned Justice William E. Hunt, Sr. joins in the foregoing dissent.

_____
Justice